ROBERT TIMBERLAKE NEWCOMB, III, SCOTT D. NAFE, GARY T. DAVIS, AND WIFE, KAREN J. DAVIS, AND PELHAM JONES, PLAINTIFFS v. COUNTY OF CARTERET, UNITED STATES OF AMERICA, GEORGE BROWN, JULIAN M. BROWN, JULIAN BROWN, JR., EARL CHADWICK, TEMPLE CHADWICK, GLORIA DAVIS, RANDY FRYE, NORMAN FULCHER, JOE O'NEAL GARNER, ROBERT GUTHRIE, SAMMY GUTHRIE, GRAY HARRIS, MAUREEN HARRIS, MYRON HARRIS, TAMMY HILL, DAVID N. JONES, LARRY KELLUM, LARRY KELLUM, JR., ROBERT KITTRELL, LEE LAWRENCE, D.A. LEWIS, JEFF LEWIS, MARK LEWIS, THOMAS LEWIS, AND WIFE, DENISE LEWIS, LUKE MIDGETT, RANDY STEVE MILAM, JR., LARRY MOORE, CHARLES NEWKIRK, CRAIG NEWKIRK, BECKY PAUL, THE ANNIE PINER FAMILY LIMITED PARTNERSHIP, ROSALIE CHADWICK PINER, TIMMY POTTER, NINO GIOVANNI PUPATTI, LUTHER ROBINSON, KENNY RUSTICK, THOMAS ALLEN SMITH, THOMAS ALLEN SMITH, JR., JEFFREY TAYLOR, SAMUEL THOMAS AND WIFE CYNTHIA THOMAS, SUSANNE WHITE, KEVIN WILLIAMSON, SONNY WILLIAMSON, MELVIN WILLIS, TERRY WILLIS, ROBERT WAYNE WORKMAN, JR., DEFENDANTS

No. COA09-1254

(Filed 2 November 2010)

### 1. Waters and Adjoining Lands— creation of harbor—riparian rights

In a case arising from the creation of Marshallberg Harbor, the trial court correctly granted summary judgment for plaintiffs on riparian rights issues. The extent to which plaintiffs had riparian rights in Marshallberg Harbor did not hinge upon whether the harbor was natural or manmade; given that Marshallberg Harbor was clearly capable of navigation by watercraft, the owners of property bordering the harbor clearly have riparian rights in its waters.

### 2. Appeal and Error— appealability—amended summary judgment order—certification added—beyond correction of clerical error—writ of certiorari granted

The trial court lacked the authority to amend its summary judgment order to add a certification allowing immediate appeal through reliance on its authority to correct clerical errors under N.C.G.S. § 1A-1, Rule 60(a). The appeal from this portion of the summary judgment order was dismissed, but the record and briefs were treated as a petition for *certiorari*, which was granted.

NEWCOMB v. CNTY. OF CARTERET

[207 N.C. App. 527 (2010)]

## 3. Easements— construction of harbor—control of permanent structures

The trial court correctly concluded that Carteret County had the right to control installation and repair of permanent structures in Marshallberg Harbor where the original easement granted broad and unambiguous rights to the County with the intention that the Harbor function as a public rather than a private asset, and a subsequent easement to the federal government for construction of the Harbor did not disturb those rights.

## 4. Appeal and Error— denial of summary judgment—prescriptive easement

Plaintiffs were not entitled to seek immediate appellate review of the trial court's decision to deny them summary judgment on a prescriptive easement issue as a matter of right. Further, plaintiffs' request for a writ of *certiorari* was denied.

Appeal by certain defendants and cross-appeal by plaintiffs from Order entered 9 March 2009 by Judge Russell J. Lanier, Jr., in Carteret County Superior Court. Heard in the Court of Appeals 23 February 2010.

*Ward and Smith, P.A., by Ryal W. Tayloe, for plaintiff-cross appellants/appellees Scott D. Nafe, Gary T. Davis, Karen J. Davis, and Pelham Jones.*

*Harvelland Collins, P.A., by Wesley A. Collins, for plaintiff-cross appellants/appellees Robert Timberlake Newcomb, III, Gary T. Davis, Karen J. Davis, and Pelham Jones.*

*Chesnutt, Clemmons, Peacock & Long, P.A., by Gary H. Clemmons, for defendants-appellants/appellees George Brown, Julian M. Brown, Julian Brown, Jr., Earl Chadwick, Temple Chadwick, Randy Frye, Norman Fulcher, Joe O'Neal Gardner, Robert Guthrie, Sammy Guthrie, Maureen Harris, Tammy Hill, Larry Kellum, Larry Kellum, Jr., Robert Kittrell, Lee Lawrence, D.A. Lewis, Jeff Lewis, Mark Lewis, Thomas Lewis, Denise Lewis, Luke Midgett, Randy Steve Milam, Jr., Larry Moore, Charles Newkirk, Craig Newkirk, Becky Paul, Nino Giovanni Pupatti, Luther Robinson, Kenny Rustick, Thomas Allen Smith, Thomas Allen Smith, Jr., Jeffrey Taylor, Kevin Williamson, Sonny Williamson, Melvin Willis, Terry Willis, and Robert Wayne Workman, Jr.*

*Wheatly, Wheatly, Weeks & Lupton, P.A., by Claud R. Wheatly, III, for defendant-appellee Carteret County.*

ERVIN, Judge.

Defendants George Brown, Julian M. Brown, Julian Brown, Jr., Earl Chadwick, Temple Chadwick, Randy Frye, Norman Fulcher, Joe O'Neal Gardner, Robert Guthrie, Sammy Guthrie, Maureen Harris, Tammy Hill, Larry Kellum, Larry Kellum, Jr., Robert Kittrell, Lee Lawrence, D.A. Lewis, Jeff Lewis, Mark Lewis, Thomas Lewis, Denise Lewis, Luke Midgett, Randy Steve Milam, Jr., Larry Moore, Charles Newkirk, Craig Newkirk, Becky Paul, Nino Giovanni Pupatti, Luther Robinson, Kenny Rustick, Thomas Allen Smith, Thomas Allen Smith, Jr., Jeffrey Taylor, Kevin Williamson, Sonny Williamson, Melvin Willis, Terry Willis, and Robert Wayne Workman, Jr. (Joint Individual Defendants) appeal and Plaintiffs Robert Timberlake Newcomb, III, Scott D. Nafe, Gary T. Davis, and wife, Karen J. Davis, and Pelham Jones cross-appeal from an order entered by the trial court granting partial summary judgment in favor of Plaintiffs with respect to the issue of whether Plaintiffs had riparian rights into Marshallberg Harbor; denying Plaintiffs' request for summary judgment with respect to the issue of whether Plaintiffs' properties were subject to certain prescriptive easements applicable to various roadways, parking areas and paths; and construing certain easements to afford Defendant Carteret County the responsibility for overseeing the installation and use of permanent structures in Marshallberg Harbor and to require Carteret County to serve as an arbiter with respect to any disputes over the installation and use of such structures. After careful consideration of the various challenges to the trial court's summary judgment order that have been advanced by the Joint Individual Defendants and Plaintiffs in light of the record and the applicable law, we conclude that Plaintiffs' appeal from the trial court's decision concerning the prescriptive easement issue should be dismissed and that the remainder of the trial court's order should be affirmed.

## I. Factual Background

### A. Substantive Facts

Marshallberg is an unincorporated community located at the eastern end of Carteret County on a peninsula that is "bounded on the east by Core Sound, on the south by The Straits, and on the west by Sleepy

Creek." Marshallberg presently has a population of approximately 528 people. The mainstays of Marshallberg's economy and culture include commercial fishing and boat building.

On or about 28 June 1948, the Chief Engineer of the United States Army submitted a report, which was printed as part of House Document No. 68 in the 1st Session of the 81st Congress, concerning whether it was advisable to provide "harbor improvements at and in the vicinity of Marshallberg" in connection with an existing waterway project from Pamlico Sound to Beaufort Harbor, North Carolina, by way of Core Sound. On 17 May 1950, Congress passed the River and Harbor Act of 1950 ("Waterway From Pamlico Sound to Beaufort Harbor, N.C.-Harbor Improvement at Marshallberg"), which authorized construction of an approach channel and harbor in Marshallberg in accordance with the project outlined in House Document No. 68.

In House Document No. 68, the Board of Engineers recommended that the existing waterway project be modified "to provide for a harbor 6 feet deep, 100 feet wide, and about 600 feet long in the natural drain between the mouth of Sleepy Creek and the surfaced highway at Marshallberg, with an approach channel of the same depth, 60 feet wide, from the 6-foot contour in The Straits, near the public dock, to the entrance of Sleepy Creek and thence to the harbor . . . ." One of the principal justifications for the project described in House Document No. 68 was the creation of a harbor to protect the boats in the area from "sustain[ing] considerable damage during storms in seeking refuge in the shallow waters of Sleepy Creek." However, House Document No. 68 also indicated that the construction of the proposed harbor was justified for the purpose of inducing more commercial fishermen to visit the area, reducing the time needed to travel to the fishing grounds, providing for the centralized harboring of boats, and alleviating potential malarial conditions. According to House Document No. 68, the improvements were "necessary for the safety and convenience of established and prospective navigation." The Board of Engineers' recommendation that the Marshallberg Harbor project be approved was conditioned upon assurances from "responsible local interests" that they would "(a) [p]rovide without cost to the United States all lands, easements, rights-of-way, and spoil-disposal areas necessary for the construction of the project and subsequent maintenance, when and as required; (b) hold and save the United States free from all damages due to the construction and subsequent maintenance of the project; and (c) provide

at their own expense suitable space for public landing open to all on equal terms." According to House Document No. 68, the construction of the proposed harbor was to be accompanied by various improvements to be provided by the local community in the form of "an access walkway, stalls for tying up boats, and a public landing[.]"

In order to satisfy these conditions, various property owners and Carteret County granted certain easements which facilitated the completion of the project. The three easements provided, in pertinent part, as follows:

1. On 19 October 1956, various land owners, who owned "certain lands in the community of Marshallberg . . . upon which or through which the United States Government proposes to construct a small boat harbor for the boat owners of the people of Marshallberg, and any and all other boat owners desiring to use same," "in order to bring about the completion of such a project, with full realization as to the benefit to be received thereby, not only to the said land owners, but to the community and county as well, and [with] full knowledge and recognition that these benefits far exceed the granting and giving of an easement over their lands for said purpose," conveyed "unto the County of Carteret . . . a perpetual right and easement, said easement to include the right to have all necessary dredged materials deposited upon the lands herein affected, all without further charge to the United States Government, to said county, later to be assigned, transferred or reconveyed to the United States Government, to dredge and construct a channel from the Straits channel, or Core Sound, into and up Sleepy Creek, and into and upon the lands belonging to the" grantors.

2. On 25 October 1956, Carteret County, in light of the fact that the tract of land covered by the easement "is needed in the construction of" "a channel in Sleepy Creek from Core Sound and a connecting harbor at Marshallberg," and "in consideration of the sum of One ($1.00) Dollar, the receipt of which is hereby acknowledged, and the benefits that will result and accrue to the County of Carteret," conveyed "the perpetual rights and easement to enter unto, dig, or cut away any or all of the hereinbefore described tract or land as may be required for the construction and maintenance of the [harbor project] or any enlargement thereof, and to maintain the portion cut away and removed, as part of the navigable waters of the United States."

3. On 1 June 1957, a number of individuals who owned property bordering "on the boat basin at Marshallberg" "subject to existing easements . . . for a boat basin and other utilities," conveyed "the perpetual rights and easements to enter upon, use, manage, improve and maintain any or all of the hereinbefore described tract of land for a public landing open to all on equal terms in accordance with the provisions of the project set forth in" House Document No. 68.

After obtaining the necessary easements, the United States Army Corps of Engineers (USACE) constructed Marshallberg Harbor in the late 1950s.

Prior to the construction of the harbor, the property in question was essentially undeveloped. The area in which Marshallberg Harbor is now located originally consisted of a cove at the mouth of Sleepy Creek. On its east end, near Marshallberg Road, the property consisted of pasture, water and myrtle bushes, and honeysuckle. On the west end, near the Straits and Sleepy Creek, the land became wetter, with marsh grass, mutton grass, and mud predominating. The property served as a drainage area for run-off from the west end of Marshallberg, with a three foot drainage ditch running from Marshallberg Road to the marshy area.

After its construction, Marshallberg Harbor has been used by the Joint Individual Defendants and others, including members of the general public, for various purposes. Following the completion of construction, the Marshallberg community installed a bulkhead at the head of the harbor, removed the spoils, graded the banks, and took other actions intended to facilitate use of the harbor. Many of these activities were organized and undertaken in earlier years by the Marshallberg Community Men's Club. After 1997, the Marshallberg Community Club, Inc., contributed time and money for the purpose of replacing the bulkhead, installing street lights around the harbor and paying the associated monthly fees, installing a "flapper" to improve drainage at the head of the harbor, grading and otherwise improving the roads around the harbor, installing ropes and poles at the head of the harbor, and undertaking other actions to improve the harbor's appearance. The Joint Individual Defendants and other Marshallberg residents have built and maintained docks in the harbor and walkways around its perimeter which have been used by a variety of persons. In the early years after the construction of the harbor, some individuals sought and obtained approval from the surrounding landowners before building docks and

similar facilities in the harbor. Subsequently, however, individuals constructed facilities in the harbor without obtaining permission from the surrounding landowners to do so.

## B. Procedural History

On 26 July 2005, Plaintiffs[1] filed a complaint against Carteret County, the United States, and numerous individual Defendants, some of whom owned property in the vicinity of Marshallberg Harbor and some of whom used facilities in Marshallberg Harbor without owning any adjacent property, alleging that the easements described in more detail above were granted to the United States for the sole purpose of permitting the initial construction and continued maintenance of Marshallberg Harbor, that the easements did not grant any right of access to Marshallberg Harbor to any person other than Carteret County and the United States or allow any person to go on Plaintiffs' private property for the purpose of accessing Marshallberg Harbor, that the easements did not "confer upon any individual or entity the right to moor or dock boats in Plaintiffs' riparian corridor or otherwise interfere with the riparian rights of Plaintiffs," that the easements "do not confer upon [any person] or entity the right to build any improvement, including docks or piers, upon the property of Plaintiffs," and that the easements did not "restrict the riparian rights of Plaintiffs . . . to improve their respective property in any way, including the demolition, construction, installation, and maintenance of piers, docks and other structures and improvements within Plaintiffs' . . . riparian corridors." As a result, Plaintiffs requested that the court enjoin "all Defendants . . . (a) from entering upon the lands of Plaintiffs, including Plaintiffs' riparian corridors out into Marshallberg Harbor, for any purpose[;]" (b) "from entering upon the lands of Plaintiffs, including Plaintiffs' riparian corridors out into Marshallberg Harbor, for the purpose of gaining access to boats or other vessels in Marshallberg Harbor and/or the docks or piers located adjacent to Plaintiffs' property that extend into Marshallberg Harbor;" (c) "from trespassing upon the lands of Plaintiffs or interfering with Plaintiffs' property rights in any way, including Plaintiffs' riparian rights;" and (d) "from docking or anchoring boats within Plaintiffs' riparian corridors," and require "all Defendants to remove any boats, vessels, or other items of personal property from Plaintiffs' property and from Plaintiffs' riparian corridors."

---

1. Plaintiffs own certain tracts of property that adjoin Marshallberg Harbor, although other persons own property adjoining the harbor as well.

On 15 August 2005, 18 August 2005, 29 August 2005, 21 September 2005, and 23 September 2005, respectively, Carteret County; Defendants Samuel and Cynthia Thomas;[2] the United States; Defendants David N. Jones, Susanne White, and Gloria Davis;[3] and the Joint Individual Defendants[4] filed answers to Plaintiffs' complaint in which they admitted the existence of a dispute over the meaning of the easements that resulted in the construction of Marshallberg Harbor.[5] In addition, the Joint Individual Defendants moved to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and failure to state a claim for which relief could be granted, denied the material allegations of Plaintiffs' complaint, requested the Court to adopt a different construction of the relevant easements than that advocated for by Plaintiffs, and asserted a number of affirmative defenses, including the public trust doctrine, the existence of certain implied and prescriptive easements, and the creation of certain neighborhood public roads or public roads by prescription or implied dedication.[6]

On 1 March 2006, Judge Benjamin G. Alford heard the dismissal motions filed by the Joint Individual Defendants. On 24 April 2006, Plaintiffs moved to amend their complaint. On 28 April 2006, Judge Alford entered an order denying Plaintiffs' amendment motion and the Joint Individual Defendants' dismissal motions. Although the Joint Individual Defendants noted an appeal from Judge Alford's order, this Court dismissed their appeal as having been taken from an unappealable interlocutory order on 1 May 2007. *Newcomb v. Cty. of Carteret*, 183 N.C. App. 142, 145-46, 643 S.E.2d 669, 670-71 (2007).

---

2. Defendants Samuel and Cynthia Thomas own real property adjacent to Marshallberg Harbor and filed an answer that requests relief consistent with that sought by Plaintiffs.

3. Defendants David N. Jones, Susanne White, and Gloria Davis own real property adjacent to Marshallberg Harbor and filed an answer in which they admitted the material allegations of Plaintiffs' complaint and requested the court to enter a judgment declaring the rights of the parties.

4. Although Defendant Timmy Potter joined the answer filed by the Joint Individual Defendants, he is no longer represented by counsel for the Joint Individual Defendants and is not participating in this appeal.

5. At various points during the course of the proceedings in the Superior Court, Plaintiffs voluntarily dismissed their claims against Defendants Annie Piner Family Limited Partnership and Gary Harris.

6. Defendant Myron Harris is deceased, and no party has been substituted in his place.

On 8 August 2007 and 9 August 2007, respectively, Carteret County and the Joint Individual Defendants filed motions seeking the entry of summary judgment. The Joint Individual Defendants' summary judgment motion was accompanied by affidavits from numerous individuals, including most of the Joint Individual Defendants.[7] These affidavits described the ownership of the land beneath Marshallberg Harbor, the steps that had been taken to ensure free access to Marshallberg Harbor, the use that the affiants had made of Marshallberg Harbor, the docks that had been constructed in Marshallberg Harbor, and the "roads" and paths that ran around Marshallberg Harbor. In response, Plaintiffs filed an affidavit from Plaintiff Pelham T. Jones on 16 August 2007 discussing the condition of the property on which Marshallberg Harbor was built prior to the construction of that facility. On 20 August 2007, the Joint Individual Defendants filed additional affidavits from Julian M. Brown, Sr., and David Allen Lewis describing the condition of the land on which Marshallberg Harbor was built prior to the construction of the harbor, the steps that had been taken to resist Plaintiffs' claim to have the right to exclude other individuals from obtaining access to Marshallberg Harbor across Plaintiffs' properties, and the nature of the use made of Marshallberg Harbor by non-residents.

On 21 August 2007, the trial court heard argument on the pending summary judgment motions. On 16 January 2009, Plaintiffs filed a calendaring request seeking the entry of an order ruling on the pending summary judgment motions. On 20 January 2009, the Joint Individual Defendants filed a motion requesting the trial court to certify any order ruling on the parties' summary judgment motions for immediate review pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b). On 26 January 2009,[8] the trial court entered an order deciding the pending summary judgment motions. In its order, the trial court determined:

---

7. The Joint Individual Defendants filed affidavits executed by Trudy Beveridge, Julian M. Brown, Sr., Julian M. Brown, Jr., George Ashley Brown, Earl McDonald Chadwick, Temple Strong Chadwick, Norman Leslie Fulcher, Joseph O. Garner, Robert Wayne Guthrie, Sammy Lee Guthrie, Maureen Harris, Larry Gray Kellum, Sr., Larry Gray Kellum, Jr., Robert Davis Kittrell, Kevin Lee Lawrence, David Allen Lewis, Denise Davis Lewis and Thomas Brian Lewis, Jeffrey Wayne Lewis, Mark E. Lewis, Luke B. Midgett, III, Larry Gordon Moore, Arthur Craig Newkirk, Charles M. Newkirk, Rebecca Brown Paul, Nino Pupati, Luther James Robinson, Kenneth E. Rustick, Thomas Allen Smith, Thomas Allen Smith, Jr., Clifford (Sonny) Williamson, Kevin Glen Williamson, Melvin Gordon Willis, and Terry Douglas Willis.

8. According to the record, the proceedings in this case were effectively suspended with the consent of the parties during the period of time between the hearing on the parties' summary judgment motions and the entry of the trial court's order ruling on those motions.

1. That there is no genuine issue of material fact on the claim by the Plaintiffs of the existence of riparian rights appurtenant to the properties of the Plaintiffs and other landowners abutting Marshallberg Harbor and that Plaintiffs are entitled to judgment as a matter of law declaring that they have riparian rights into Marshallberg Harbor as an incident of their ownership of properties abutting the Harbor, subject to the easements of the County as hereinafter set forth;

2. That there is no genuine issue of material fact as to the easement rights of the County of Carteret pursuant to those easements dated October 19, 1956, and recorded in Book 173, Page 352, Carteret County Registry, and June 1, 1957, recorded in Book 179, Page 109, Carteret County Registry, respectively, and the County is entitled to judgment as a matter of law as to such easement rights as hereinafter set forth; and

3. That there are genuine issues of material fact as to the claim of the [Joint Individual] Defendants for a public prescriptive easement over the roadways, parking areas, and pathways on or across the lands of the Plaintiffs and other landowners who abut the harbor, and neither Plaintiffs nor Defendants are entitled to judgment as a matter of law on that issue.

4. Pursuant to [Rule 54(b)], the Court finds, and hereby certifies, that, although there remain pending claims, as to the claim that Plaintiffs are entitled to judgment as a matter of law declaring that they have riparian rights into the Marshallberg Harbor as an incident of their ownership of properties abutting the Harbor, subject to the easements of Carteret County, said claim is final and that there exists no just reason for delay.

Based upon these determinations, the trial court ordered that:

1. It is hereby declared and decreed that Plaintiffs and the other property owners whose property abuts Marshallberg Harbor, their heirs, successors and assigns, have riparian rights appurtenant to their properties and as an incident of the ownership of such properties into Marshallberg Harbor, subject to the easements of the County of Carteret dated October 19, 1956, and recorded in Book 173, Page 352, Carteret County Registry, and June 1, 1957, recorded in Book 179, Page 109, Carteret County Registry, respectively.

2. The County of Carteret, by virtue of the aforesaid easements recorded in Book 173, Page 352 and Book 179, Page 109, Carteret County Registry, has the right to control the demolition, removal, repair, erection, installation, and use made of any docks, mooring stakes, anchorages, berths, or any permanent structure in the harbor, giving due regard to the riparian rights of the Plaintiffs and the other property owners whose property abuts the harbor, and such reasonable uses as the Plaintiffs and the other property owners whose property abuts the harbor may seek to make of their riparian rights; and the right of the public and all boat owners and boaters to use the waters of the harbor consistent with the purpose and intent of the harbor as expressed in its enabling statute, the River and Harbor Act of 1950 ("Waterway from Pamlico Sound to Beaufort Harbor, NC–Harbor Improvement at Marshallberg"), House Document No. 68, 81st Congress, 1st Session. The County of Carteret shall be the arbiter of any dispute concerning the demolition, removal, repair, erection, installation, and use made of any docks, mooring stakes, anchorages, berths, or any permanent structure in the harbor between the owners of property abutting the harbor, now and in the future, and the boaters, the general public, and others as disputes may arise.

3. That the Motion of the [Joint Individual] Defendants for Summary Judgment and the [] request by Plaintiffs for Summary Judgment [pursuant to N.C. Gen. Stat. § 1A-1, Rule 56(c)] on the issue of the [Joint Individual] Defendants' claimed public prescriptive easement over the roadways, parking areas, and pathways on or across the lands of the Plaintiffs and other property owners abutting the harbor shall be, and hereby are, denied. That the Motion of the [Joint Individual] Defendants for Summary Judgment [] as to the Plaintiffs' claims for riparian rights to the Marshallberg Harbor, subject to the easements of the County of Carteret, shall be, and is, hereby, denied.

4. At the hearing on the Motions for Summary Judgment, the [Joint Individual] Defendants conceded that such roadways of the harbor (Milton Willis Lane and the dirt/shell road adjacent to Plaintiff Newcomb's property[)] are not "neighborhood public roads" as originally claimed, and Plaintiffs are therefore entitled to judgment as a matter of law on this issue such that such claim shall be, and it is hereby, dismissed, with prejudice.

5. Pursuant to [Rule 54(b)], the Court hereby certifies as final the Plaintiffs' claim and the Court's Order that they are entitled to riparian rights to the Marshallberg Harbor as an incident of their ownership of properties abutting the Harbor, subject to the easements of Carteret County, as set forth in paragraph 1 and as referenced in paragraph (2) of the Order section of this Order, and further certifies that there exists no just reason for a delay on the ruling of Plaintiffs' claims by the Court, and therefore said claim and ruling thereon is immediately appealable to the North Carolina Court of Appeals.

On 23 February 2009, the Joint Individual Defendants noted an appeal to this Court from that portion of the trial court's summary judgment order that determined that " 'Plaintiffs and the other property owners whose property abuts Marshallberg Harbor, their heirs, successors and assigns, have riparian rights appurtenant to their properties and as an incident of the ownership of such properties into Marshallberg Harbor . . . .' " On 4 March 2009, Plaintiffs noted a cross-appeal to this Court from that portion of the trial court's order (1) awarding Carteret County " 'the right to control the demolition, removal, repair, erection, installation, and use made of any docks, mooring stakes, anchorages, berths, or any permanent structure in the harbor' " and making Carteret County " 'the arbiter of any dispute concerning the demolition, removal, repair, erection, installation, and use made of any docks, mooring stakes, anchorages, berths, or any permanent structure in the harbor between the owners of property abutting the harbor, now and in the future, and the boaters, the general public, and others as disputes may arise' " and (2) denying Plaintiffs' request for summary judgment pursuant to Rule 56(c), with respect to " 'the issue of the [Joint Individual] Defendants' claimed public prescriptive easement over the roadways, parking areas, and pathways on or across the lands of the Plaintiffs and other property owners abutting the harbor . . . ." On 9 March 2009, the trial court, acting on its own motion, entered an order amending the 26 January 2009 summary judgment order pursuant to N.C. Gen. Stat. § 1A-1, Rule 60(a) (2009). The 9 March 2009 amendment certified as final that portion of the trial court's order finding that Carteret County had the right to control permanent structures in Marshallberg Harbor, determined that "there exist[ed] no just reason for a delay on the ruling of [this] claim[] by the Court," and stated that the trial court's ruling on this claim should be "immediately appealable to the North Carolina Court of Appeals" as authorized by Rule 54(b). On 6 April 2009, the Joint Individual Defendants noted an appeal to this

Court seeking review of that portion of the trial court's amended summary judgment order relating to the riparian rights issue in light of the trial court's decision to amend the summary judgment order to certify an additional issue pursuant to Rule 54(b). On 13 April 2009, Plaintiffs noted a cross-appeal from that portion of the trial court's amended summary judgment order awarding Carteret County control over permanent structures in Marshallberg Harbor and making Carteret County "the arbiter of any dispute concerning" such structures in light of the trial court's decision to amend the summary judgment order to certify an additional issue pursuant to Rule 54(b). With certain limited exceptions, the trial court stayed further proceedings and the enforcement of the substantive provisions of the summary judgment order pending the completion of proceedings in the appellate division.

## II. Legal Analysis

### A. Appealability

The summary judgment order was "made during the pendency of an action [and does] not dispose of the case, but instead leave[s] it for further action by the trial court . . . to settle and determine the entire controversy." *Carriker v. Carriker*, 350 N.C. 71, 73, 511 S.E.2d 2, 4 (1999) (citing *Veazey v. City of Durham*, 231 N.C. 357, 361, 57 S.E.2d 377, 381 (1950)). Since the trial court's decision to deny summary judgment with respect to the issue of the validity of "the [Joint Individual] Defendants' claimed public prescriptive easement over the roadways, parking areas, and pathways on or across the lands of the Plaintiffs and other property owners abutting the harbor" compels the conclusion that further proceedings must necessarily occur in the Carteret County Superior Court before the entry of final judgment in this case, the trial court's summary judgment order is clearly interlocutory in nature.

As a general matter, "there is no right of immediate appeal from interlocutory orders and judgments." *Travco Hotels, Inc. v. Piedmont Natural Gas Co., Inc.*, 332 N.C. 288, 291, 420 S.E.2d 426, 428 (1992) (citing *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990)). The general rule precluding immediate appellate review of interlocutory orders is intended "to prevent fragmentary and premature appeals that unnecessarily delay the administration of justice and to ensure that the trial divisions fully and finally dispose of the case before an appeal can be heard," *Bailey v. Gooding*, 301 N.C. 205, 209, 270 S.E.2d 431, 434 (1980) (citations omitted), and rests on the understanding that "[t]here is no more effective way to procrastinate the

administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders." *Veazey*, 231 N.C. at 363, 57 S.E.2d at 382. However, immediate appellate review of interlocutory orders is available "when the trial court enters a final judgment as to one or more, but fewer than all, claims or parties and certifies there is no just reason for delay" pursuant to Rule 54(b), or when the interlocutory order affects a substantial right under N.C. Gen. Stat. § 1-277(a) (2009) and N.C. Gen. Stat. § 7A-27(d) (2009). *Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) (citing *DKH Corp. v. Rankin-Patterson Oil Co.*, 348 N.C. 583, 585, 500 S.E.2d 666, 668 (1998); *Oestreicher v. Am. Nat'l Stores*, 290 N.C. 118, 121-22, 225 S.E.2d 797, 800 (1976), *abrogated in part by Lovick v. Farris*, 2009 N.C. App. LEXIS 686 (2009)). Therefore, we must consider the extent, if any, to which each of the challenged components of the trial court's summary judgment order is properly before the Court in order to evaluate the issues presented for our consideration on appeal.

## B. Summary Judgment Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). In reviewing an order granting summary judgment, our task is to "determine, on the basis of the materials presented to the trial court, whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." *Coastal Plains Utils., Inc. v. New Hanover Cty.*, 166 N.C. App. 333, 340, 601 S.E.2d 915, 920 (2004) (citing *Oliver v. Roberts*, 49 N.C. App. 311, 314, 271 S.E.2d 399, 401 (1980), *cert. denied*, 276 S.E.2d 283 (1981)). "All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Boudreau v. Baughman*, 322 N.C. 331, 343, 368 S.E.2d 849, 858 (1988) (citing *Page v. Sloan*, 281 N.C. 697, 706, 190 S.E.2d 189, 194 (1972)). A trial court's decision granting a summary judgment motion is reviewed on a *de novo* basis. *Virginia Elec. & Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986).

## C. Substantive Legal Issues

### 1. Riparian Rights

**[1]** First, the Joint Individual Defendants argue that the trial court erred by concluding that Plaintiffs have riparian rights in Marshallberg Harbor. The Joint Individual Defendants contend that riparian rights only attach to natural, as compared to artificial, bodies of water and that, since Marshallberg Harbor was constructed in the 1950s, it is not a natural waterway in which adjoining property owners are entitled to have riparian rights. Based upon controlling authority from this Court, however, we disagree with the Joint Individual Defendants' contention.[9]

"Riparian rights are vested property rights that arise out of ownership of land bounded or traversed by navigable water." *Pine Knoll Ass'n v. Cardon,* 126 N.C. App. 155, 159, 484 S.E.2d 446, 448 *(citing In re Protest of Mason,* 78 N.C. App. 16, 337 S.E.2d 99 (1985), *disc. review denied,* 315 N.C. 588, 341 S.E.2d 27 (1986) *disc. review denied,* 347 N.C. 138, 492 S.E.2d 26 (1997)). " '[A]ll watercourses are regarded as navigable in law that are navigable in fact.' " *Gwathmey v. State of North Carolina,* 342 N.C. 287, 300, 464 S.E.2d 674, 682 (1995) (quoting *State v. Baum,* 128 N.C. 600, 604, 38 S.E. 900, 901 (1901)). For that reason, riparian rights are available to the owners of property that are adjacent to or encompass bodies of water that are navigable in fact. The riparian rights available to the owners of property "bounded or traversed by water" are derived from "two distinct properties: 1) the principal estate of land extending to the shoreline of [the body of water in question], and 2) the appurtenant estate of submerged land in [the body of water in question] benefitting the principal estate." *Weeks v. N.C. Dep't. of Nat. Res. and Cmty. Dev.,* 97 N.C. App. 215, 225, 388 S.E.2d 228, 234 (citing *Capune v. Robbins,* 273 N.C. 581, 588, 160 S.E.2d 881, 886 (1968), *disc. review denied,* 326 N.C. 601, 393 S.E.2d 890 (1990)). According to well-established North Carolina law, riparian owners have "a qualified property in the water frontage belonging, by nature, to their land, the chief advantage growing out of the appurtenant estate in the submerged land being the right of access over an extension of their water fronts to nav-

---

9. As a result of the fact that the trial court's order represents a final judgment with respect to the Plaintiffs' claim to have riparian rights into Marshallberg Harbor and the fact that the trial court certified that there was "no just reason for delay" with respect to this claim, N.C. Gen. Stat. § 1A-1, Rule 54(b), the Joint Individual Defendants' challenge to this portion of the trial court's summary judgment order is properly before this Court on appeal.

igable water, and the right to construct wharves, piers, or landings . . . ."
*Bond v. Wool,* 107 N.C. 126, 129, 12 S.E. 281, 284 (1890).

Although Defendants argue that riparian rights only attach to natural, as compared to artificial, bodies of water, this Court has recently concluded, in the context of applying the "public trust" doctrine,[10] that " '[t]he fact that a waterway is artificial, not natural,' " does not determine the extent to which a body of water is navigable. *Fish House, Inc. v. Clarke,* —— N.C. App. ——, ——, 693 S.E.2d 208, 211, *disc. review denied,* —— N.C. ——, —— S.E.2d ——, 2010 N.C. Lexis 596 (2010) (quoting *Hughes v. Nelson,* 303 S.C. 102, 105, 399 S.E.2d 24, 25 (1990)). Instead, this Court stated that "the controlling law of navigability concerning the body of water 'in its natural condition' reflects only upon the manner in which the water flows without diminution or obstruction," so that "any waterway, whether manmade or artificial, which is capable of navigation by watercraft constitutes 'navigable water' under the public trust doctrine of this state." *Id.* at ——, 693 S.E.2d at 212. Given that the concept of "navigability" as used in the "public trust" and the riparian rights contexts is identical, and the fact that this Court has rejected the distinction upon which the Joint Individual Defendants rely in the "public trust" context, we hold that the trial court correctly concluded that the extent to which Plaintiffs have riparian rights in Marshallberg Harbor does not hinge upon whether the harbor was natural or manmade. In addition, given that Marshallberg Harbor is clearly "capable of navigation by watercraft," the owners of property bordering the harbor clearly have riparian rights in its waters. As a result, we conclude that the trial court did not err by granting summary judgment in favor of Plaintiffs with respect to the riparian rights issue.[11]

---

10. According to the "public trust" doctrine, "the lands under navigable waters 'are held in trust by the State for the benefit of the public' and 'the benefit and enjoyment of North Carolina's submerged lands is available to all its citizens.' " *Parker v. New Hanover Cty.,* 173 N.C. App. 644, 653, 619 S.E.2d 868, 875 (2005) (quoting *State ex rel. Rohrer v. Credle,* 322 N.C. 522, 527, 369 S.E.2d 825, 828 (1988). *See also* N.C. Gen. Stat. § 1-45.1 (2009) (providing the protections available under the "public trust" doctrine extend to "the right to navigate, swim, hunt, fish, and enjoy all recreational activities in the watercourses of the State")).

11. In addition to challenging the extent to which Plaintiffs were entitled to riparian rights into Marshallberg Harbor, the Joint Individual Defendants have also advanced an argument relating to the nature and extent of any riparian rights that might be available to Plaintiffs. However, given that the trial court's summary judgment order does not address this issue and given that our decision with respect to the extent of Carteret County's authority over permanent structures in Marshallberg Harbor effectively addresses the issues raised by the Joint Individual Defendants' alternative argument,

## 2. Carteret County's Right to Control Marshallberg Harbor

In its summary judgment order, the trial court ruled that Plaintiffs' riparian rights were "subject to the easements of the County" and that the easements recorded at Book 173, Page 352, and Book 179, Page 109, in the Carteret County Registry gave Carteret County "the right to control the demolition, removal, repair, erection, installation, and use made of any docks, mooring stakes, anchorages, berths, or any permanent structures in the harbor" and made Carteret County "the arbiter of any dispute concerning the demolition, removal, repair, erection, installation, and use made of any docks, mooring stakes, anchorages, berths, or any permanent structure in the harbor between the owners of property abutting the harbor, now and in the future, and the boaters, the general public, and others as disputes may arise." On appeal, Plaintiffs contend that this portion of the trial court's summary judgment order was in error because the easements in question did not grant any such authority to Carteret County. We disagree.

### a. Appealability

[2] The trial court did not certify the issue of Carteret County's right to control permanent structures in Marshallberg Harbor for immediate review in its initial summary judgment order. However, in its amended summary judgment order, the trial court attempted to add a certification relating to this issue in apparent reliance on its authority to correct clerical errors under N.C. Gen. Stat. § 1A-1, Rule 60(a). A careful review of the relevant authorities establishes that the trial court lacked the authority to amend its summary judgment order in this fashion.

N.C. Gen. Stat. § 1A-1, Rule 60(a), "provides a limited mechanism for trial courts to amend erroneous judgments." *Pratt v. Staton*, 147 N.C. App. 771, 774, 556 S.E.2d 621, 623 (2001). More specifically, N.C. Gen. Stat. § 1A-1, Rule 60(a), provides that:

> [c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the judge at any time on his own initiative or on the motion of any party and after such notice, if any, as the judge orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate divi-

there is no need for us to acquiesce in the Joint Individual Defendants' request that we determine the extent of Plaintiffs' riparian rights in addition to ascertaining whether such rights exist.

sion, and thereafter while the appeal is pending may be so corrected with leave.

The trial court's amended summary judgment order did not simply correct a clerical error in the original summary judgment order. Instead, the amended summary judgment order worked a substantive modification to the initial summary judgment order. " 'A change in an order is considered substantive and outside the boundaries of [N.C. Gen. Stat. § 1A-1,] Rule 60(a) when it alters the effect of the original order.' " *Pratt*, 147 N.C. App. at 774, 556 S.E.2d at 624 (*quoting Buncombe Cty. ex rel. Andres v. Newburn*, 111 N.C. App. 822, 825, 433 S.E.2d 782, 784, *disc. review denied*, 335 N.C. 236, 439 S.E.2d 143 (1993)). In concluding that a trial court lacked the authority to modify a prior order dismissing certain claims asserted in the plaintiffs' complaint in reliance upon Rule 60(a), for the purpose of adding a certification pursuant to Rule 54(b), this Court stated that:

> by adding the trial court's Rule 54(b) certification and establishing grounds for immediate appellate review of an otherwise interlocutory order, the trial court's 10 October 2000 amended order, likewise "altered the substantive rights of the parties." . . . [T]he amended order in the instant case allowed plaintiffs to circumvent the established procedural rules governing the bringing of an appeal and secure appellate review of an otherwise unappealable order. Accordingly, we hold that [N.C. Gen. Stat. § 1A-1,] Rule 60(a) is not an appropriate means for seeking an amendment to an order or judgment to add the trial court's . . . certification [pursuant to Rule 54(b)].

As in *Pratt*, the trial court in this case lacked the authority to use Rule 60(a) to add a certification pursuant to Rule 54(b) to the initial summary judgment order because that action altered the substance of the initial order. Plaintiffs vigorously contend that the Joint Individual Defendants consented to the inclusion of a certification pursuant to Rule 54(b), with respect to the issue of Carteret County's right to control permanent structures in Marshallberg Harbor and that the Joint Individual Defendants have suffered no prejudice as a result of the trial court's action. However, the limitations on a trial court's authority to amend orders pursuant to Rule 60(a), are jurisdictional in nature, *In re C.N.C.B.*, —— N.C. App. ——, ——, 678 S.E.2d 240, 243 (2009) (stating that, "[b]ecause the trial court was without jurisdiction pursuant to [N.C. Gen. Stat. § 1A-1,] Rule 60(a)[,] to add the omitted finding of fact, the corrected order must be vacated"), and cannot be overlooked on the grounds of consent, *Dep't. of Transp. v. Tilley*, 136 N.C. App. 370,

374, 524 S.E.2d 83, 86 (stating that "[d]efendants correctly point out that subject matter jurisdiction cannot be consented to or stipulated to") (citing *Stanley, Edwards, Henderson v. Dep't. of Conservation and Dev.*, 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973), *disc. review denied*, 351 N.C. 640, 543 S.E.2d 868, *cert. denied*, 531 U.S. 878, 148 S.E.2d 129, 121 S. Ct. 186 (2000)), or lack of prejudice. Thus, the trial court lacked the authority to amend the original summary judgment order for the purpose of certifying additional issues for immediate appeal pursuant to Rule 54(b).

As we read the record, Plaintiffs have not cited any alternative basis for the assertion of our appellate jurisdiction over this issue. Further, we do not read Plaintiffs' *certiorari* petition to encompass that portion of the trial court's order addressing the County's authority over the harbor. As a result, we are compelled to grant the Joint Individual Defendants' motion to dismiss Plaintiffs' appeal from that portion of the trial court's summary judgment order addressing the extent of Carteret County's authority over the permanent structures in Marshallberg Harbor.

Although we have dismissed Plaintiffs' appeal relating to the "harbor control" issue, we conclude that we will grant *certiorari* on our own motion to permit us to address this question on the merits. We have made this determination for a number of related reasons, including the fact that the parties apparently did agree, at one point, that it would be advantageous for this Court to consider both the issue of whether Plaintiffs had riparian rights into Marshallberg Harbor and the extent to which the County was entitled to control permanent structures in Marshallberg Harbor in the course of an interlocutory appeal from the trial court's summary judgment order, the fact that the Joint Individual Defendants addressed the extent of Plaintiffs' riparian rights in Marshallberg Harbor (a subject which the trial court attempted to resolve by construing the easements originally granted in connection with the construction of Marshallberg Harbor so as to provide that Carteret County would have control over permanent structures in the harbor) in their challenge to the trial court's summary judgment order, and the fact that consideration of this issue on the merits at this time will expedite the ultimate disposition of this case. As a result, we hereby treat the record and briefs as a petition for the issuance of a writ of *certiorari* directed toward the issue of Carteret County's role in the operation of Marshallberg Harbor pursuant to N.C.R. App. P. 21(a)(1) (2010) and grant that petition.

### b. Construction of Easements

[3] The extent to which Carteret County is entitled to control permanent structures in Marshallberg Harbor and to serve as the arbiter of disputes arising from such structures hinges upon the proper interpretation of the easements granted in connection with the harbor's construction. Thus, in order to decide whether the trial court properly granted summary judgment in favor of Carteret County with respect to this issue, we must examine the 19 October 1956 easement from certain landowners to Carteret County and the 25 October 1956 easement from Carteret County to the United States.[12] "An easement deed, such as the one in the case at bar, is, of course, a contract." *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962).

> Deeds of easement are construed according to the rules for construction of contracts so as to ascertain the intention of the parties as gathered from the entire instrument at the time it was made. When "there is any doubt entertained as to the real intention," the court should construe the deed of easement with "reason and common sense" and adopt the interpretation which produces the usual and just result.

*Brown v. Weaver-Rogers Assocs., Inc.*, 131 N.C. App. 120, 122, 505 S.E.2d 322, 324 (1998), *disc. review denied*, 350 N.C. 92, 532 S.E.2d 523 (1999) (citations omitted); see also *Lovin v. Crisp*, 36 N.C. App. 185, 189, 243 S.E.2d 406, 409 (1978) (stating that the intention of the parties is to be gathered from "the instrument in its totality") (quoting *Reynolds v. Sand Co.*, 263 N.C. 609, 139 S.E.2d 888 (1965)). When deciding the scope of an easement, "consideration must be given to the purposes for

---

12. As should be obvious from an examination of the textual discussion, we agree with Plaintiffs that the 1 June 1957 easement, which grants Carteret County the right "to enter upon, use, manage, improve and maintain" a tract of land located at the head of Marshallberg Harbor "for a public landing open to all on equal terms," has no bearing on the extent, if any, to which the 19 October 1956 and 25 October 1956 easements authorize Carteret County to supervise permanent structures located in the harbor. As a result of our conclusion that the 1 June 1957 easement has no effect on the extent of Carteret County's role in the ongoing regulation of Marshallberg Harbor, we need not address Plaintiffs' contention that the trial court impermissibly expanded the authority granted by the 1 June 1957 easement to include all of Marshallberg Harbor. Instead, we will examine the issues raised by Plaintiffs' challenge to this portion of the trial court's summary judgment order on the basis of an analysis of the relevant easements. *Strickland v. Hedrick*, 194 N.C. App. 1, 22, 669 S.E.2d 61, 75 (2008) (stating that " '[a]ssuming *arguendo* that the trial court's reasoning . . . was incorrect, we are not required on this basis alone to determine that the ruling was erroneous' " and that " '[t]he question for review is whether the ruling of the trial court was correct' ") (quoting *State v. Austin*, 320 N.C. 276, 290, 357 S.E.2d 641, 650, *cert. denied*, 484 U.S. 916, 98 L. Ed. 2d 224, 108 S. Ct. 267 (1987). 108 S. Ct. 267 (1987).

which the easement was granted." *Shingleton v. State*, 260 N.C. 451, 457, 133 S.E.2d 183, 187 (1963) (citing *Sparrow v. Tobacco Co.*, 232 N.C. 589, 61 S.E.2d 700 (1950)). In ascertaining "the intention of the parties as of the time the contract was made," "consideration must be given to the purpose to be accomplished, the subject-matter of the contract, and the situation of the parties." *Weyerhaeuser*, 257 N.C. at 719, 127 S.E.2d at 541 (citing *DeBruhl v. Highway Comm'n*, 245 N.C. 139, 144-45, 95 S.E.2d 553, 557 (1956)). In the event that the language of an easement "is clear and unambiguous, effect must be given to its terms, and the court, under the guise of construction, cannot reject what the parties inserted or insert what the parties elected to omit." *Id.* (citing *Hartford Accident & Indem. Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201-02 (1946)); *see also Stonecreek Sewer Ass'n v. Gary D. Morgan Developer, Inc.*, 179 N.C. App. 721, 730, 635 S.E.2d 485, 491 (2006) (stating that, in the event that the easement is precisely described, "the plain language . . . and terms control") (citing *Williams v. Abernethy*, 102 N.C. App. 462, 464-65, 402 S.E.2d 438, 440 (1991), *disc. review denied*, 361 N.C. 227, 643 S.E.2d 400 (2007)). If, on the other hand, the language in which the easement is couched is ambiguous, it " 'may be interpreted by reference to the attendant circumstances, to the situation of the parties, and especially to the practical interpretation put upon the grant by the acts of the parties in the use of the easement immediately following the grant.' " *Williams*, 102 N.C. App. at 465, 402 S.E.2d at 440 (quoting 2 G. Thompson, *Commentaries on the Modern Law of Real Property* § 385, at 528).[13] Since an easement holder "may neither change the easement's purpose nor expand the easement's dimensions," *Bunn Lake Prop. Owner's Ass'n. v. Setzer*, 149 N.C. App. 289, 296, 560 S.E.2d 576, 581 (2002) (citations omitted), he or she " 'must not change the use for which the easement was created so as to increase the burden of the servient tract." *Swaim v. Simpson*, 120 N.C. App. 863, 864, 463 S.E.2d 785, 787 (1995) (quoting I. Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina* § 15-21 (4th Ed. 1994)), *aff'd*, 343 N.C. 298, 469 S.E.2d 553 (1996).

---

13. Although the Joint Individual Defendants correctly note that references to other deeds or maps in a deed are properly considered for purposes of construing that instrument, *Kelly v. King*, 225 N.C. 709, 716, 36 S.E.2d 220, 224 (1945), we do not believe, as the Joint Individual Defendants contend, that the application of this principle to the facts of this case results in the incorporation of House Document No. 68 in its entirety into the deeds of easement that are at issue here. Although we agree that a map referenced in the record as Map. No. PSB-90 would be incorporated into the deeds of easement based on the principal upon which the Joint Individual Defendants rely, we do not believe that consideration of that map has added materially to our analysis of the issues in dispute between the parties.

The 19 October 1956 easement grants "a perpetual right and ease-ment, said easement to include the right to have all necessary dredged materials deposited upon the lands herein affected, all without further charge to the United States Government, to [Carteret County], later to be assigned, transferred or reconveyed to the United States Government, to dredge and construct a channel from the Straits chan-nel, or Core Sound, into and up Sleepy Creek, and into and upon the lands belonging to the undersigned, and to dredge and construct a basin or boat harbor" as shown on Map No. PSB-90. The deed in question specifically states that the United States "proposes to construct a small boat harbor for the boat owners of the people of Marshallberg and any and all other boat owners desiring to use same" and that it was "neces-sary to obtain from [the] owners [of the land upon which the harbor was to be built] an easement or right-of-way for the purpose of said con-struction, as well as later maintenance." In granting this easement, the landowners expressly stated a desire to cooperate with "the completion of such a project, with full realization as to the benefit to be received thereby, not only to the said land owners, but to the community and county as well . . . ."

Plaintiffs argue on appeal, based on the language in the 19 October 1956 easement, that "it is the practice of the United States Government to have land owners, in matters of this kind, convey directly to the county in which the development or project is located, the county in such cases later conveying to the United States Government;" other statements in the easement referring to the role of the United States in constructing the harbor; and the fact that the easement grants rights to Carteret County, "later to be assigned, transferred or reconveyed to the United States Government, to" construct the proposed harbor, that it is "clear that it is the United States, not the County, that is in charge of the Harbor project" (emphasis in the original) and "is to retain the rights granted under the Easement." The upshot of Plaintiffs' position con-cerning the proper construction of the 19 October 1956 easement is that the easement "is limited to the right to dredge the land and construct the channel and Harbor" and "contains no language giving the County any other rights . . . ." We do not, however, find this logic persuasive.

Plaintiffs' reading of the 19 October 1956 easement ignores the presence of language clearly establishing that the construction of Marshallberg Harbor was intended to serve public, rather than private, interests. The proposed harbor could only serve the public, as com-pared to a private, interest in the event that some entity had the right to ensure that the harbor functioned as a public, rather than a private,

NEWCOMB v. CNTY. OF CARTERET

[207 N.C. App. 527 (2010)]

asset. For that reason, Plaintiffs' argument is inconsistent with the clear language of the 19 October 1956 easement describing the overarching purpose of the Marshallberg Harbor project. In addition, the literal language of the 19 October 1956 easement indicates that the rights granted to Carteret County "include[d] the right to have all necessary dredged materials deposited upon the lands herein affected" "later to be assigned, transferred or reconveyed to the United States Government," for the purpose of constructing the necessary harbor facilities. The presence of the word "include" indicates that the right to "have all necessary dredged materials deposited upon the lands herein" was only part of the rights granted pursuant to the 19 October 1956 easement. On the contrary, the clearly expressed purpose sought to be achieved by the granting of the 19 October 1956 easement was the construction and operation of a harbor "for the boat owners of the people of Marshallberg and any and all other boat owners desiring to use same," an end which could not be achieved solely through the construction and maintenance of a physical facility. The language of the 19 October 1956 easement does not in any way limit the rights granted to Carteret County in order to permit the achievement of that purpose. As a result, after carefully examining the language of that portion of the 19 October 1956 easement, we are convinced that the relevant language does not purport to require the transfer of the entire collection of rights created by the original easement from Carteret County to the United States, but rather contemplates the transfer of the right to "have all necessary dredged materials deposited upon the lands herein affected" so that the United States could "dredge and construct a channel from the Straits channel, or Core Sound, into and up Sleepy Creek, and into and upon the lands belonging to the undersigned, and to dredge and construct a basin or boat harbor . . . ." Since all of the rights granted by the easement were not to be transferred from Carteret County to the United States, the parties clearly contemplated that the County would retain the rights that were not to be subsequently conveyed to the United States. As a result, we are not persuaded that the language of the 19 October 1956 easement should be construed in the narrow manner advocated by Plaintiffs and believe, instead, that the 19 October 1956 easement should be construed to grant Carteret County the rights necessary to permit the construction, maintenance, and oversight of a small boat harbor for the use of the Marshallberg community and the general public.

The language of the 25 October 1956 easement between Carteret County and the United States confirms our interpretation of the 19 October 1956 easement. According to the 25 October 1956 easement,

Carteret County conveyed to the United States "the perpetual rights and easement to enter unto, dig, or cut away any or all of the [real property described in the 25 October 1956 easement] as may be required for the construction and maintenance of the aforesaid work or improvement or any enlargement thereof, and to maintain the portion cut away and removed, as part of the navigable waters of the United States." As we understand this language, which does not purport to convey all of the rights granted to Carteret County in the 19 October 1956 easement to the United States, the United States obtained the rights necessary to construct and physically maintain Marshallberg Harbor. However, nothing in the language of the 25 October 1956 easement in any way indicates that Carteret County gave up any right that it had to oversee Marshallberg Harbor stemming from the 19 October 1956 easement, particularly given that the provisions of the 25 October 1956 easement granting the United States certain maintenance rights are not explicitly exclusive. Thus, we do not construe the 25 October 1956 easement as stripping Carteret County of any rights that it may have obtained under the 19 October 1956 easement for the purpose of overseeing the proposed harbor in the interests of the public.

In urging us to reach a contrary conclusion, Plaintiffs point to language in the 25 October 1956 easement requiring "local interests [to] furnish free of cost to the United States of America all necessary rights-of-way for the said improvement," note that the 25 October 1956 easement granted Carteret County "perpetual easements thereon for the purpose of executing and carrying out the aforesaid improvements," and remind us that Carteret County conveyed to the United States the "perpetual rights and easement to enter unto, dig, or cut away any or all of the hereinbefore described tract or land as may be required for the construction and maintenance of the aforesaid work or improvement or any enlargement thereof, and to maintain the portion cut away and removed . . . ." In addition, Plaintiffs point out that the 25 October 1956 easement does not contain any language reserving any rights to Carteret County. Plaintiffs' arguments in reliance upon the language of the 25 October 1956 easement are not persuasive.

Nothing in the language of the 25 October 1956 easement purports to strip Carteret County of any rights granted under the 19 October 1956 easement. On the contrary, the fact that the United States obtained the right to construct Marshallberg Harbor on the property specified in the 25 October 1956 easement does not in any way preclude Carteret County from exercising any rights available to it under the 19 October 1956 easement. In other words, we do not believe that the 25 October

1956 easement conveyed all of Carteret County's easement rights to the United States. Instead, we conclude that the 25 October 1956 easement simply authorized the United States to take certain actions while leaving the rights granted to Carteret County under the 19 October 1956 easement intact.

Thus, for the reasons set forth above, we conclude that the 19 October 1956 easement gave Carteret County broad rights relating to the construction, maintenance, and oversight of Marshallberg Harbor and that nothing in the 25 October 1956 easement stripped Carteret County of those rights. The rights granted to Carteret County under the 19 October 1956 easement were necessary to ensure that Marshallberg Harbor served "boat owners of the people of Marshallberg and any and all other boat owners desiring to use the" harbor. In view of the broad and unambiguous rights granted to Carteret County under the 19 October 1956 easement and the fact that those rights were not disturbed by the 25 October 1956 easement, we conclude that the trial court correctly construed the relevant easements to provide that Carteret County "ha[d] the right to control the demolition, removal, repair, erection, installation, and use made of any docks, mooring stakes, anchorages, berths, or any permanent structure in the harbor" and should serve as "arbiter of any dispute concerning the demolition, removal, repair, erection, installation, and use made of any docks, mooring stakes, anchorages, berths, or any permanent structure in the harbor between the owners of property abutting the harbor, now and in the future, and the boaters, the general public, and others as disputes may arise."[14]

### 3. Prescriptive Easement

[4] The second issue which Plaintiffs seek to raise on appeal stems from the trial court's refusal to grant summary judgment on the prescriptive easement issue. As we have already concluded, the trial court's summary judgment order is interlocutory in nature. Thus, in resolving Plaintiffs' challenge to the trial court's refusal to grant summary judgment in their favor with respect to the prescriptive easement issue, we must first address the extent, if any, to which this component of the trial court's summary judgment order is immediately appealable.

The trial court correctly refrained from certifying the prescriptive easement issue for immediate review pursuant to Rule 54(b), given that

14. In view of the fact that our decision with respect to the "harbor control" issue is based exclusively on what we believe to be the clear and unambiguous meaning of the 19 October 1956 and 25 October 1956 deeds of easement, we have not considered any evidence extrinsic to those documents in making our decision.

a refusal to grant summary judgment is not, as a general proposition, a final judgment with respect to a particular claim or party. In addition, Plaintiffs have wisely refrained from arguing that the trial court's refusal to grant their motion for summary judgment with respect to the prescriptive easement issue affected a substantial right given this Court's decision that a party's right to hold property free from such an encumbrance does not affect such a right. *Miller v. Swann Plantation Dev. Co.*, 101 N.C. App. 394, 396, 399 S.E.2d 137, 139 (1991) (stating that "[w]e simply fail to see how defendants' claimed right to hold title to the property free from [an] encumbrance 'will clearly be lost or irremediably adversely affected' if the order is not reviewed before final judgment") (quoting *Blackwelder v. Dept. of Human Resources*, 60 N.C. App. 331, 335, 299 S.E.2d 777, 780 (1983)). Instead, Plaintiffs argue that the relevant portion of the trial court's summary judgment order is immediately appealable based on principles such as those enunciated in *Moses v. State Highway Comm'n*, 261 N.C. 316, 317, 134 S.E.2d 664, 665 (stating "when, as here, the parties desire an answer to a question which is fundamental in determining their rights, is also of public importance, and when decided will aid State agencies in the performance of their duties, we will in the exercise of the supervisory jurisdiction given us, answer the question") (citations omitted), *cert. denied*, 379 U.S. 930, 13 L. Ed. 2d 342, 85 S. Ct. 327 (1964)). *See also Edwards v. City of Raleigh*, 240 N.C. 137, 139, 81 S.E.2d 273, 275 (1954), *Stanback v. Stanback*, 287 N.C. 448, 453, 215 S.E.2d 30, 34 (1975) (stating that appellate courts will review trial court orders "not otherwise appealable, when such review will serve the expeditious administration of justice;" that "[s]uch discretion is not intended to displace the normal procedures of appeal, but inheres to appellate courts under our supervisory power to be used only in those rare cases in which normal rules fail to administer to the exigencies of the situation;" and that, "[w]hen discretionary review is allowed, the question of appealability becomes moot") (citing *Howland v. Stitzer*, 240 N.C. 689, 692, 84 S.E.2d 167, 170 (1954); *Ward v. Martin*, 175 N.C. 287, 289-90, 95 S.E. 621, 623 (1918); *Wachovia Bank & Tr. Co. v. Morgan*, 9 N.C. App. 460, 466, 176 S.E.2d 860, 864 (1970); 2 McIntosh, *North Carolina Practice and Procedure* § 1782(7) (Phillips Supp. 1970); and *Furr v. Simpson*, 271 N.C. 221, 222-23, 155 S.E.2d 746, 748 (1967)). However, as the citations to *Edwards*, 240 N.C. at 139, 81 S.E.2d at 275 (referring to the Supreme Court's authority " 'to issue any remedial writs necessary to give it a general supervision and control over the proceedings of the inferior courts' ") (quoting N.C. Const. Art. IV, sec. 8), and *Furr*, 271 N.C. at 223, 155 S.E.2d at 748 (stating that "[a]ppellee's contention that this appeal should be dismissed as

premature . . . is rendered feckless by our order allowing *certiorari*")
(citing *Williams v. Bd. of Educ.*, 266 N.C. 761, 764, 147 S.E.2d 381, 383
(1966)), make clear, the principles upon which Plaintiffs rely do not con-
stitute separate grounds for assuming appellate jurisdiction over
appeals from interlocutory orders, but rather refer to this Court's
authority to issue a writ of *certiorari* in order to permit review of inter-
locutory orders that are not appealable as a matter of right. N.C. Gen.
Stat. § 7A-32(c) (2009). As a result, Plaintiffs are not entitled to seek
immediate appellate review of the trial court's decision with respect to
the prescriptive easement issue as a matter of right and must instead
rely on their alternative request for the issuance of a writ of *certiorari*.

In seeking the issuance of a writ of *certiorari*, Plaintiffs argue that
the prescriptive easement issue involves important questions of consid-
erable interest to the public, that the prescriptive easement issue is
inexorably intertwined with the other issues that are before the Court,
and that a decision in their favor with respect to this issue would expe-
dite the final resolution of this case. On the other hand, the Joint
Individual Defendants, in opposing Plaintiffs' *certiorari* petition,
emphasize that immediate appellate review of a trial court's order deny-
ing summary judgment should only be afforded in "extraordinary cir-
cumstances," *Moore v. Moody*, 304 N.C. 719, 720, 285 S.E.2d 811, 812
(1982), and argue that there is nothing "extraordinary" about the trial
court's refusal to grant summary judgment with respect to the prescrip-
tive easement issue. We agree with the Joint Individual Defendants.

The issues raised by Plaintiffs' challenge to the trial court's ruling
on the prescriptive easement issue are exceedingly fact-intensive in
nature. As the voluminous record that has been presented to us estab-
lishes, a proper determination of the correctness of the trial court's rul-
ing would require consideration of a large amount of information con-
cerning events and conditions at Marshallberg Harbor over an extended
period of time. In our judicial system, most factual determinations are
reserved for juries; the ultimate effect of the trial court's decision is to
leave resolution of this issue for the jury, which will be able to hear all
relevant witnesses and make any necessary credibility determinations.
We do not find any of Plaintiffs' arguments in favor of departing from
our general practice of declining to review most orders denying requests
for summary judgment on an interlocutory basis to be persuasive.
Although, as Plaintiffs point out, a decision in their favor on the pre-
scriptive easement issue would end the present litigation, similar con-
siderations would support the issuance of a writ of *certiorari* in virtu-
ally any case in which a trial court refuses to grant summary judgment.

In addition, while there can be no doubt that the public interest will almost always be served by the expeditious resolution of litigation, there are benefits to be obtained from the fuller development of the record available as the result of the examination and cross-examination of witnesses. Furthermore, the routine allowance of interlocutory appeals would have a tendency to delay, rather than advance, the ultimate resolution of matters in litigation. *Veazey*, 231 N.C. at 363, 57 S.E.2d at 382. Finally, we are not persuaded that the factual matters that must be examined in order to resolve the prescriptive easement issue in this case are so inextricably intertwined with the other issues that are before the Court on appeal that proceeding to decide whether the trial court properly denied summary judgment with respect to the prescriptive easement issue would be advisable. Thus, for all of these reasons, we conclude, in the exercise of our discretion, that Plaintiffs' request for *certiorari* review of the prescriptive easement issue should be denied.

## III. Conclusion

As a result, we conclude that the trial court correctly granted summary judgment in Plaintiffs' favor with respect to the riparian rights issue and in favor of Carteret County with respect to the question of how issues related to permanent structures in Marshallberg Harbor should be decided. In addition, we conclude that Plaintiffs do not have the right to appeal from the trial court's refusal to grant summary judgment with respect to the prescriptive easement issue as a matter of right and that Plaintiffs' request for the issuance of a writ of *certiorari* concerning that issue should be denied. Thus, the trial court's summary judgment order should be, and hereby is, affirmed in part and Plaintiffs' appeal from the trial court's refusal to grant summary judgment with respect to the prescriptive easement issue should be, and hereby is, dismissed.

AFFIRMED IN PART; DISMISSED IN PART.

Judges HUNTER and GEER concur.