Aym Techs., LLC v. Rodgers, 2020 NCBC 20.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

AYM TECHNOLOGIES, LLC,

        Plaintiff and
        Counterclaim-
        Defendant,

v.

GENE RODGERS,

        Defendant, and

SCOPIA CAPITAL MANAGEMENT
LP; and COMMUNITY BASED
CARE, LLC,

        Defendants and
        Counterclaim-
        Plaintiffs.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 21788

**ORDER AND OPINION ON THE
SCOPIA PARTIES' MOTION TO STAY
COUNTERCLAIM PROCEEDINGS
AND PLAINTIFF'S MOTION TO
CERTIFY JUDGMENT FOR APPEAL**

1.     **THIS MATTER** is before the Court on Defendant and Counterclaim Plaintiffs Scopia Capital Management LP ("Scopia") and Community Based Care, LLC's ("CBC," together with Scopia, the "Scopia Parties") Motion to Stay Counterclaim Proceedings Pending Resolution of a Related New York Action ("Motion to Stay"), (ECF No. 177), and Plaintiff and Counterclaim Defendant Aym Technologies, LLC's ("Aym" or "Plaintiff") Motion to Certify Judgment for Appeal ("Motion to Certify") (together, the "Motions"), (ECF No. 185).

2.     After considering the Motions, the related briefs, appropriate matters of record, and the arguments of counsel, the Court orally **DENIED** the Motions at a hearing held on February 5, 2020 (the "Hearing"). The Court now enters this Order and Opinion memorializing its oral rulings.

*Rayburn Cooper & Durham, P.A., by G. Kirkland Hardymon and Luke G. Thomas, and Wilder Pantazis Law Group, by Raboteau T. Wilder, for Plaintiff and Counterclaim Defendant Aym Technologies, LLC.*

*Bell Davis & Pitt, P.A., by Joshua B. Durham, Jason B. James, and Edward B. Davis, for Defendant Gene Rodgers.*

*Pollack Soloman Duffy, LLP, by Barry S. Pollack (pro hac vice), and Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Benjamin R. Holland, Lia A. Lesner, and Carl M. Short, III, for Defendants and Counterclaim Plaintiffs Scopia Capital Management LP and Community Based Care, LLC.*

Bledsoe, Chief Judge.

I.

ANALYSIS

A.    Motion to Stay

3.    The Court dismissed each of Plaintiff's claims by summary judgment on October 16, 2019. *Aym Techs., LLC v. Rodgers*, 2019 NCBC LEXIS 64, at \*49 (N.C. Super. Ct. Oct. 16, 2019, ECF No. 175).  As a result of the Court's ruling, the only claims remaining in this action ("North Carolina Action" or "this Action") are the Scopia Parties' counterclaims against Aym for fraudulent misrepresentation and unfair or deceptive trade practices under N.C.G.S. § 75-1.1 ("Counterclaims").  On December 6, 2019, the Scopia Parties moved to stay further action on the Counterclaims in deference to a related action currently pending between Aym, the Scopia Parties, and others in New York state court (the "New York Action," together with the North Carolina Action, the "Actions").

4.    A North Carolina court may exercise its discretion to stay proceedings in a pending action to permit trial in a foreign jurisdiction upon a finding "that it would

work substantial injustice for the action to be tried in a court of this State[.]" N.C.G.S. § 1-75.12(a); *see also, e.g.*, *Motor Inn Mgmt., Inc. v. Irvin-Fuller Dev. Co.*, 46 N.C. App. 707, 711, 266 S.E.2d 368, 370 (exercising discretion), *appeal dismissed and disc. rev. denied*, 301 N.C. 93, 273 S.E.2d 299 (1980).

5.    In deciding a motion to stay proceedings,

> [r]elevant facts, among others, that may be considered are: convenience and access to another forum; nature of case involved; relief sought; applicable law; possibility of jury view; convenience of witnesses; availability of compulsory process to produce witnesses; cost of obtaining attendance of witnesses; relative ease of access to sources of proof; enforceability of judgment; burden of litigating matters not of local concern; desirability of litigating matters of local concern in local courts; choice of forum by plaintiff; [and] all other practical considerations which would make the trial easy, expeditious and inexpensive.

*Motor Inn Mgmt., Inc.*, 46 N.C. App. at 713, 266 S.E.2d at 371.

6.    The Scopia Parties argue that the New York Action, which involves some but not all of the same parties and transactions at issue in this Action, should take priority over prosecution of their Counterclaims here. They contend that both Actions relate to transactions between Aym and its Chief Executive Officer, Lewis Quinn ("Quinn"), on one side, and the Scopia Parties and their affiliates, on the other, and concern each side's competing efforts to acquire North Carolina providers in the intellectual and developmental disabilities ("IDD") industry. (Pl.'s Reply Br. Supp. Mot. Certify J. Appeal Ex. B, at ¶ 1 [hereinafter "NY 2nd Am. Compl."], ECF No. 192.3); *see Aym Techs., LLC*, 2019 NCBC LEXIS 64, at *2–3, *7–9 (summarizing Aym and Quinn's and the Scopia Parties' efforts to acquire IDD providers).

7. Significant for resolution of this Motion, it is undisputed that Quinn signed non-use and non-disclosure agreements with Scopia containing New York forum selection clauses (the "NDAs") in conjunction with his efforts to sell Aym to Scopia. (NY 2nd Am. Compl. ¶ 2.) Those efforts took place in July 2015, after the Scopia Parties acquired key IDD providers that Aym had also been interested in acquiring. At that time, Quinn signed the NDAs and "sought to sell Aym to Scopia, advocating for the roll up and vertical integration of Aym with" IDD providers that the Scopia Parties had already acquired or "intended to identify and acquire in the future." *Aym Techs., LLC*, 2019 NCBC LEXIS 64, at *8. Aym and Quinn have not challenged the validity of the NDAs or the forum selection clauses in the New York Action, (*see* NY 2nd Am. Compl. ¶¶ 27–30), and no party has placed them at issue in this Action.

8. The Scopia Parties' claims in the New York Action are based on their allegation that Aym and Quinn breached the NDAs by using the Scopia Parties' confidential information to improve Aym's business plan. (NY 2nd Am. Compl. ¶¶ 71–76.) In contrast, Aym's now-dismissed claims against the Scopia Parties in this Action were focused on unrelated conduct generally preceding the signing of the NDAs and falling outside the scope of the New York forum selection clauses. *See Aym Techs., LLC*, 2019 NCBC LEXIS 64, at *2–3 ("This action arises out of Plaintiff Aym['s] . . . contention that Defendant Gene Rodgers[,] . . . while an independent contractor of Aym, acted duplicitously and in derogation of his contractual duties to Aym by helping Defendants Scopia . . . and . . . [CBC] acquire North Carolina healthcare providers that Rodgers knew Aym was interested in acquiring under its

confidential acquisition plan[,] . . . which Aym contends Rodgers subsequently shared with Scopia and CBC without Aym's consent.").

9.    In addition, although both Actions include claims for unfair or deceptive trade practices under N.C.G.S. § 75-1.1, those claims involve very different conduct. The section 75-1.1 Counterclaim in this Action is based on Quinn's allegedly fraudulent representations regarding his motive in involving himself with the Scopia Parties' efforts to acquire IDD providers. (Defs. Scopia Capital Management LP's & Community Based Care, LLC's Answer Compl. & Countercl. 15 [hereinafter "NC Countercls."], ECF No. 69.) Specifically, the Scopia Parties allege that "Quinn made material misrepresentations to [the Scopia Parties], misleading them into believing that Quinn intended to invest money into a business venture with them, when in fact Quinn intended to use his ruse to press for a sale of Aym to [the Scopia Parties]." (NC Countercls. ¶ 1.) In contrast, the section 75-1.1 claim in the New York Action, which was added several months after the section 75-1.1 Counterclaim was asserted here, is based on Quinn and Aym's alleged "fraudulent scheme to misappropriate and surreptitiously misuse confidential information about [the Scopia Parties'] contemplated financing" to engage in copycat financing for Aym's business plan (collectively, the "Chapter 75 Claims"). (NY 2nd Am. Compl. ¶¶ 84–85.)

10.    The most important factor in determining whether to stay a proceeding in deference to another action is "how the two actions compare[,]" or, stated differently, how much they overlap. *Paramount Rx, Inc. v. Duggan*, 2015 NCBC LEXIS 32, at *13 (N.C. Super. Ct. Mar. 27, 2015); *see Wachovia Bank v. Harbinger Capital Partners*

*Master Fund I, Ltd.*, 2008 NCBC LEXIS 6, at \*21 (N.C. Super. Ct. Mar. 13, 2008) ("[T]o grant a stay, it is not required that the parties and issues in both actions be identical. Substantial or functional identity is sufficient." (citation omitted)).

11. The Scopia Parties argue that it would work a substantial injustice for the Counterclaims in this Action to proceed in parallel with the New York Action because the Chapter 75 Claims are "identical in most respects[,]" which could lead to inconsistent outcomes, and because priority should be given to the New York Action as the parties' contractual choice of forum since Aym's North Carolina claims have been dismissed. (Mem. Supp. Mot. Defs. Scopia Capital Management LP & Community Based Care, LLC Stay Countercl. Proceedings Pending Resolution Related New York Action 3 [hereinafter "Br. Supp. Mot. Stay"], ECF No. 178.)

12. The Court disagrees. While the New York and North Carolina Actions are founded upon the same general sequence of events, neither the Actions generally, nor the Chapter 75 Claims specifically, meaningfully overlap either chronologically or topically. The Counterclaims in this Action are each based on Quinn's alleged knowingly false statement to Scopia that he wanted to invest in a Scopia fund or affiliated entity when his true intent was to leverage a sale of Aym to Scopia. (NC Countercls. ¶¶ 30–31, 36–40.) For this conduct, the Scopia Parties seek reimbursement for the "significant out-of-pocket expenses and lost opportunities" they incurred by treating Quinn as a real potential investor. (NC Countercls. ¶ 34.)

13. In contrast, the New York Action is primarily for breach of contract based on the Scopia Parties' allegation that Quinn and Aym violated the NDAs by disclosing

Scopia's confidential information to third parties after Scopia rebuffed Quinn's efforts to sell Aym to Scopia and used that information to benefit Aym's own business plan. (NY 2nd Am. Compl. ¶¶ 74–75.) Furthermore, the Chapter 75 claim in New York is based on alleged copycat financing, (*see* Br. Supp. Mot. Stay Ex. B, at 3 [hereinafter "NY Order Mot. Amend Compl."], ECF No. 178.3), not on "Aym's scheme to gain leverage at selling its business by misrepresenting its interest, ability and willingness to invest[,]" as in the North Carolina Action, (NC Countercls. ¶ 37).

14. While it is relevant to both Actions, at least as background, that Quinn entered into the NDAs and allegedly misrepresented his interest in selling Aym to the Scopia Parties, the Chapter 75 Claims do not involve a common nucleus of operative facts or rely on the same evidence. Quinn's allegedly fraudulent representations to the Scopia Parties and the expense that the Scopia Parties allegedly incurred in treating Quinn as a real potential investor—the focus of the North Carolina Counterclaims—is not pertinent to whether Quinn and Aym violated the NDAs and engaged in copycat financing—the focus of the New York Action. As such, the Actions are insufficiently alike to support a stay.

15. While the factual dissimilarity between the Actions is all but determinative in this instance, additional pertinent factors and practical considerations further support the Court's rejection of a stay, including that the North Carolina Action predates and has advanced further than the New York Action, the Chapter 75 claim in New York was alleged based on discovery that took place in the North Carolina Action, (NY Order Mot. Amend Compl. 3), the actionable conduct in both Actions took

place in North Carolina, and the Chapter 75 Claims involve interpretation of North Carolina law.[1]

16.     Based on the above, the Court concludes that the Scopia Parties have failed to demonstrate that they would suffer a "substantial injustice" absent a stay and that their Motion to Stay should therefore be denied.[2]  *See Muter v. Muter*, 203 N.C. App. 129, 134, 689 S.E.2d 924, 928 (2010) (affirming denial of stay for failure to show substantial injustice); *Am. Motorists Ins. Co. v. Avnet, Inc.*, 98 N.C. App. 385, 388, 391 S.E.2d 50, 52 (1990) (vacating stay because no substantial injustice found where overlapping claims in foreign action had been dismissed, North Carolina court could not force New York court to consolidate the claims in one action, and North Carolina was a convenient forum); *see also PQ Capital Ventures, LLC v. Vestar Corp.*, 2013 NCBC LEXIS 64, at *6–7 (N.C. Super. Ct. Dec. 5, 2013) (denying motion to stay where no substantial injustice to either party); *Robertshaw Controls Co. v. Moll Indus.*, 2007 NCBC LEXIS 48, at *5 (N.C. Super. Ct. July 17, 2007) (denying motion to stay where "[a]ll of the evidence show[ed] that no substantial injustice w[ould] arise by hearing the matter in this state").

B.     <u>Motion to Certify</u>

17.     On January 6, 2020, contemporaneously with the filing of its brief in opposition to the Motion to Stay, Plaintiff moved to certify for immediate appeal this

---

[1] The Court concludes that other factors such as Plaintiff's choice of forum and the location of witnesses do not support one forum in favor of the other under the circumstances here.

[2] That Plaintiff reversed course during the Hearing to support the entry of a stay does not relieve the Scopia Parties' burden to demonstrate substantial injustice.

Court's rulings on Defendants' motions to dismiss and for summary judgment. *See generally Aym Techs., LLC*, 2019 NCBC LEXIS 64 (granting Defendants' motions for summary judgment on Plaintiff's claims); *Aym Techs., LLC v. Rodgers*, 2018 NCBC LEXIS 14 (N.C. Super. Ct. Feb. 9, 2018, ECF No. 58) (granting in part and denying in part Defendants' 12(b)(6) motions to dismiss). Plaintiff argues that there is no just reason to delay Aym's right to appeal because: (1) the Scopia Parties' counsel represented that they would voluntarily dismiss the Counterclaims upon entry of summary judgment against Aym, which they have failed to do;[3] (2) the prosecution of the Counterclaims, and therefore Aym's right to appeal, would be indefinitely delayed if the Court were to grant the Motion to Stay; and (3) there is no just reason to delay because the Counterclaims are "mere placeholders" and not central to this Action. (Pl.'s Br. Supp. Mot. Certify J. Appeal 3–4, ECF No. 186.) The Court finds Plaintiff's contentions without merit.

18. "A judgment is either interlocutory or the final determination of the rights of the parties." N.C. R. Civ. P. 54(a). "A final judgment is one that determines the entire controversy between the parties, leaving nothing to be decided in the trial court." *Ratchford v. C.C. Mangum, Inc.*, 150 N.C. App. 197, 199, 564 S.E.2d 245, 247 (2002). There is generally no right to appeal interlocutory orders and judgments. *State v. Sanchez*, 175 N.C. App. 214, 215–16, 623 S.E.2d 780, 781 (2005) (citation

---

[3] Counsel for the Scopia Parties stated at the summary judgment hearing that "[i]f summary judgment [were] granted here, it would be our intention to seek leave to withdraw [the Counterclaims] without prejudice." (Pl.'s Reply Br. Supp. Mot. Certify J. Appeal Ex. A., at 49:19–21, ECF No. 192.2.) The Court concludes both that counsel's statement of future intent was not a binding commitment and, moreover, that Plaintiff could not reasonably or justifiably rely on a such a statement of future intent in deciding its appeal strategy.

omitted). "The general rule precluding immediate appellate review of interlocutory orders is intended 'to prevent fragmentary and premature appeals that unnecessarily delay the administration of justice and to ensure that the trial divisions fully and finally dispose of the case before an appeal can be heard[.]' " *Newcomb v. Cty. of Carteret*, 207 N.C. App. 527, 539, 701 S.E.2d 325, 335 (2010) (quoting *Bailey v. Gooding*, 301 N.C. 205, 209, 270 S.E.2d 431, 434 (1980)). The rule precluding interlocutory appeals rests on the theory that "[t]here is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders." *Id.* at 539–40, 701 S.E.2d at 335 (quoting *Veazey v. Durham*, 231 N.C. 357, 363, 57 S.E.2d 377, 382 (1950)).

19. An interlocutory order is nevertheless appealable in two instances:

> The first is when the trial court enters a final judgment with respect to one or more, but less than all of the parties or claims, and certifies the judgment for immediate review under Rule 54(b) of the Rules of Civil Procedure [(the "Rule(s)")]. The second instance is when the order affects a substantial right and will work injury to the appellant[] if not corrected before final judgment.

*Lambe Realty Inv., Inc. v. Allstate Ins. Co.*, 137 N.C. App. 1, 3, 527 S.E.2d 328, 330 (2000) (internal citations and quotation marks omitted).

20. Under Rule 54(b),

> [w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, or when multiple parties are involved, the court may enter a final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment. Such judgment shall then be subject to review by appeal or as otherwise provided by these rules or other statutes.

N.C. R. Civ. P. 54(b). Whether there is no just reason for delay is a determination within the sound discretion of the trial court. *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 344, 511 S.E.2d 309, 311 (1999).

21. Here, the Court's partial denial of Defendants' motions to dismiss in February 2018 and partial grant of summary judgment in October 2019 were both interlocutory.[4] *See Grant v. Miller*, 170 N.C. App. 184, 186, 611 S.E.2d 477, 478 (2005) ("Ordinarily, a trial court's denial of a motion to dismiss pursuant to Rule 12(b)(6) . . . is an interlocutory order from which there is no right of appeal." (citation omitted)); *Johnson v. Lucas*, 168 N.C. App. 515, 518, 608 S.E.2d 336, 338 (2005) (holding the trial court's grant of a partial motion for summary judgment was interlocutory because several of the plaintiff's claims remained pending). The Court did not certify either ruling as a final judgment, and Plaintiff did not request certification of those orders until it filed the Motion to Certify in January 2020.

22. As an initial matter, North Carolina's appellate courts do not permit trial courts to afford Plaintiff the relief it seeks—retroactive certification of previously entered orders absent material amendments triggered by appropriate motion. *See Martin v. Landfall Council of Ass'ns*, No. COA18-505, 2018 N.C. App. LEXIS 1244, at *12 (N.C. Ct. App. Dec. 18, 2018) (holding second order attempting to certify earlier order improper because "the second order . . . was not an amended judgment, did not set out the reasoning of the first order, and simply referenced the first order before

---

[4] While the Court granted summary judgment on all of Plaintiff's claims, the Court's order was not a final judgment because the Counterclaims remain for trial.

stating that an immediate appeal was warranted"); *Branch Banking & Tr. Co. v. Peacock Farm, Inc.*, 241 N.C. App. 213, 217, 772 S.E.2d 495, 499 (2015) (holding trial court's retroactive, "stand-alone" order attempting to certify a previously entered interlocutory judgment was improper because Rule 54(b) requires certification to be in the judgment itself and the order "was not an amended judgment" of the claims decided); *Newcomb*, 207 N.C. App. at 543–45, 701 S.E.2d at 337–38 (dismissing appeal of summary judgment order based on certification because trial court lacked authority to amend the original order to add certifying language under Rule 60(a), which permits clerical corrections, because certification "altered the substance of the initial order"). Instead, our courts have made clear that the proper time to request Rule 54(b) certification is before a judgment is entered. *See Branch Banking & Tr. Co.*, 241 N.C. App. at 218, 772 S.E.2d at 499 (stating a party may request inclusion of Rule 54(b) certification language in a court's judgment before it is entered).

23. Here, while Plaintiff has moved for certification under Rule 54(b), Plaintiff has not moved this Court to reconsider material elements of the orders Plaintiff requests that the Court certify, *see Ehmann v. Medflow, Inc.*, 2019 NCBC LEXIS 10, at *10 (N.C. Super. Ct. Feb. 6, 2019) (stating a trial court may reconsider a decision under Rule 54(b) based on "(1) the discovery of new evidence, (2) an intervening development or change in the controlling law, or (3) the need to correct a clear error or prevent a manifest injustice" (citation omitted)), and, as noted above, retroactive certification, standing alone, is beyond the Court's authority.

24. Moreover, Aym's primary argument in support of its Motion to Certify—that its right to appeal would be indefinitely delayed by a stay of the Counterclaim proceedings—is moot because the Court has denied the Motion to Stay. Indeed, it is the Court's intention to expeditiously move this case forward to trial.

25. Furthermore, Plaintiff has neither argued nor shown that either of the Court's orders at issue have affected Aym's substantial right, *see Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994) (dismissing appeal where appellant "presented neither argument nor citation . . . [in support of its] right to appeal the order dismissing its counterclaims"), and our courts have made clear that delay in the time for appeal of dismissed claims when other claims remain pending does not affect a substantial right, *see Gilbert v. N.C. State Bar*, 363 N.C. 70, 95, 678 S.E.2d 602, 618 (2009) ("Simple delay does not amount to a deprivation or impairment of a substantial right[.]").

26. For each of these reasons, therefore, the Court concludes that Plaintiff's Motion to Certify should be denied.

II.

CONCLUSION

27. **WHEREFORE**, for the reasons stated above, the Court, in the exercise of its discretion, hereby **DENIES** the Motions.

28. The Court shall address pre-trial scheduling matters by separate order following resolution of the Scopia Parties' March 2, 2020 motion to re-open discovery,

(ECF No. 195), and the completion of any additional discovery the Court may decide to permit.

   **SO ORDERED**, this the 19th day of March, 2020.


        <u>/s/ Louis A. Bledsoe, III</u>
        Louis A. Bledsoe, III
        Chief Business Court Judge