J. RUSSELL CAPPS, KENNETH R. MOSER, MAURICE S. TOLER, MORRIS
    GOLDBERG, GEORGE T. MORRIS, MRS. LESTER M. GREENE, JR., MRS.
    THOMAS W. LINDER, PHILLIP L. SMITH, J. M. ALLEN, JR., MRS. EARL
    R. PARKER, PHILLIP BUNN, C. P. HELMS, WILBER M. EFIRD, W. H.
    MIMS, ERNEST C. BRASWELL, ROBERT E. BECK, JANET S. BECK,
    JEAN M. WHITE, JOE P. HARRIS, HARRY C. LYON, MRS. WILLIE H.
    COOKE, MRS. W. F. CRANFILL, WARNER N. ALLEN, BRUCE W.
    MILLER, EARL EDWARDS AND B. L. FOIL, PLAINTIFFS v. THE CITY OF
    RALEIGH, DEFENDANT AND SUMMIT RIDGE, INC., JOHN W. THEDIECK,
    JR., DAN C. AUSTIN AND HOUSING AUTHORITY OF THE CITY OF
    RALEIGH, INTERVENOR-DEFENDANTS

No. 7710SC90

(Filed 21 February 1978)

1. **Rules of Civil Procedure § 56— summary judgment—findings and conclusions**

    It is not a part of the function of the court on a motion for summary judg-
    ment to make findings of fact and conclusions of law.

2. **Municipal Corporations § 30.20— rezoning proposal—actual notice not required**

    Actual personal notice to the owners of land affected by a rezoning pro-
    posal is not necessary in order for the defense of laches to be available in an
    action attacking the rezoning ordinance.

3. **Municipal Corporations § 30.20— rezoning—notice of hearing—description of property**

    A metes and bounds description of property to be rezoned is not required
    in the notice of public hearing on the rezoning proposal, and plaintiff property
    owners received constructive notice that their property might be rezoned
    where the notice published in a newspaper stated that the area to be affected
    was "Northwest, North and Northeast Raleigh, vicinity of U.S. Hwy. 70; in-
    tersection of Creedmoor Road and Leesville Road; North Haven, North Ridge,
    intersection of Old Wake Forest Road, Spring Forest Road and Litchford
    Road; and U.S. Hwy. 1 and 401 (North), Millbrook Road, New Hope Church
    Road, and Trawick Road." Therefore, the defense of laches was available in an
    action by plaintiffs attacking the rezoning ordinance.

4. **Equity § 2.2— laches—motion for summary judgment—declaratory judgment action**

    The defense of laches is properly raised by summary judgment motion
    and is applicable in a declaratory judgment action.

5. **Municipal Corporations § 31; Equity § 2.2— attack on rezoning or-
    dinance—laches**

    Plaintiffs were barred by laches from attacking a rezoning ordinance
    where they did nothing to invalidate the ordinance until they filed a petition to
    "down zone" the rezoned property five years and nine months after the rezon-
    ing ordinance was adopted, and their only justification for the delay was that
    they had received no actual notice of the adoption of the rezoning ordinance,

and where defendants, in reliance on the rezoning ordinance, collectively had spent in excess of $600,000 in grading, paving, house construction, installation of water and sewer lines, architectural and engineering services, and acquisition of property to serve the area as public parks, and had entered into legal obligations for the expenditure of substantial additional sums.

Judge ARNOLD dissenting.

APPEAL by plaintiffs from judgment of *Bailey, Judge,* entered 15 December 1976, Superior Court, WAKE County. Heard in the Court of Appeals 16 November 1977.

Plaintiffs, on 23 July 1976, filed this action asking that the court enter a declaratory judgment declaring that Zoning Ordinance "1969 858-ZC-76" (which was zoning proposal Z-31-69) of the City of Raleigh is "unlawful, invalid and void insofar as it pertains to plaintiffs and the property bounded by U.S. Highway 1 and U.S. Highway 401 (north), New Hope and Trawick Roads" (hereinafter referred to as the Area). Plaintiffs alleged that they are residents, citizens and taxpayers of Wake County, and own various tracts of land and homes located outside the City of Raleigh but within one mile thereof and within the Area which is the subject of the litigation.

Defendant City of Raleigh answered denying the invalidity of the ordinance and asserting the defenses of laches and estoppel.

Upon motion, Summit Ridge, Inc., John W. Thedieck, Jr., Dan C. Austin, and the Housing Authority of the City of Raleigh were allowed to intervene. Each answer filed by the intervenors denied the invalidity of the ordinance, asserted the defenses of estoppel and laches, and included a motion for summary judgment. Defendant City of Raleigh also moved for summary judgment.

Interrogatories were filed and answered by plaintiffs and defendants. Depositions were taken and affidavits filed.

At the 13 December 1976 Session of Wake Superior Court, hearing was had on the motions for summary judgment. Judgment allowing the motions was filed on 15 December 1976, and plaintiffs appeal therefrom.

*Teague, Johnson, Patterson, Dilthey and Clay, by Robert M. Clay and Robert W. Sumner, for plaintiff appellants.*

*Thomas A. McCormick, Jr., Office of the City Attorney, for defendant appellee, the City of Raleigh.*

*Boyce, Mitchell, Burns and Smith, by Eugene Boyce, for defendant appellees, Summit Ridge, Inc., Dan C. Austin, and John W. Thedieck, Jr.*

*Allen, Steed and Allen, by D. James Jones, Jr., for defendant appellee, Housing Authority of the City of Raleigh.*

MORRIS, Judge.

[1]   At the outset we feel compelled again to point out that it is not a part of the function of the court on a motion for summary judgment to make findings of fact and conclusions of law. "As we have pointed out on previous occasions, finding the facts in a judgment entered on a motion for summary judgment presupposes that the facts are in dispute. '. . . [T]he Supreme Court and this Court have emphasized in numerous opinions that upon a motion for summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried.' *Stonestreet v. Compton Motors, Inc., et als*, 18 N.C. App. 527, (Filed 27 June 1973)." *Insurance Co. v. Motor Co.*, 18 N.C. App. 689, 692, 198 S.E. 2d 88, 90 (1973). Despite our frequent reminders, we find that some of the trial judges continue to treat the motion for summary judgment as a hearing upon the merits before the court without a jury where the judge becomes the trier of the facts. Granted, in rare situations it can be helpful for the trial court to set out the *undisputed* facts which form the basis for his judgment. When that appears helpful or necessary, the court should let the judgment show that the facts set out therein are the undisputed facts. The judgment now before us does not so indicate. It does appear, however, that the *material* facts set out are not in dispute.

Plaintiffs contend that the court erred in failing to find as a fact that plaintiffs had no actual notice of the change in the zoning classification of their property and further erred in failing to conclude as a matter of law that actual notice was necessary before their declaratory judgment action could be barred as a matter of law by the doctrine of laches. This is plaintiffs' assign-

ment of error No. 4, and it demonstrates clearly, we think, the confusion resulting from finding facts on a summary judgment motion. Obviously, if the facts are not in dispute, there is no need to "find facts". If there is a need to "find facts", then summary judgment will not be appropriate if those facts are material. Rule 56(c) of the North Carolina Rules of Civil Procedure provides in pertinent part that, upon motion, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." However, if there be a dispute as to an immaterial fact, summary judgment is not precluded. *Keith v. Reddick, Inc.*, 15 N.C. App. 94, 189 S.E. 2d 775 (1972).

Defendants based their motions for summary judgment on their contention that plaintiffs are barred by laches and estoppel as shown by the pleadings, admissions, affidavits, interrogatories, and depositions filed. We look to the record to determine the undisputed facts relative to these contentions and find that the following are facts which are not in dispute and which are material to the question.

Plaintiffs, as alleged in the complaint, were at the time of the adoption of the ordinance complained of and at the time of the entry of summary judgment, residents and owners of property in the Area. On 30 June 1969 and on 8 July 1969, there was published in the Raleigh Times, a newspaper of general circulation in the City of Raleigh and Wake County, "Notice of Public Hearing on Application to Change the Zoning Ordinance of the City of Raleigh". This notice stated that a joint meeting of the City Council and Planning Commission of the City of Raleigh would be held in the Council Chamber, Municipal Building on 16 July at 2:15 p.m. at which time public hearings would be conducted for the purpose of considering applications to change the Zoning Ordinance which includes the Zoning District Map. Among the areas to be considered for rezoning was the following:

"Z-31-69 Northwest; North and Northeast Raleigh, vicinity of U.S. Hwy. 70; intersection of Creedmoor Road and Leesville Road; North Haven, North Ridge, intersection of Old Wake Forest Road, Spring Forest Road and Litchford Road; and U.S. Hwy. 1 and 401 (North), Millbrook Road, New Hope

Church Road, and Trawick Road, all properties coming under zoning jurisdiction of the City of Raleigh by reason of recent annexation. Portions to R-4, R-6, R-10, O & I-1, O & I-2, Shopping Center and industrial according to maps on file in the Planning Dept."

Some two weeks prior to the date set for the hearings, the City mailed notices of the public hearing and proposed zoning ordinance changes to the homes of a number of residents of the Area. Four of the named plaintiffs were among the addressees of those notices. The City also posted and erected signs around the perimeter of the Area affected. The signs were white with red circles and bold black lettering. In 7/8″ boldface the signs said "REZONING HEARING"; and in 3/4″ boldface, "ALL PERSONS INTERESTED IN OR AFFECTED BY A CHANGE OF ZONING CLASSIFICATION OF THIS PROPERTY ARE INVITED TO ATTEND A PUBLIC HEARING AT THE MUNICIPAL BUILDING, 2:15 P.M." Space was provided for the insertion of a description of the property involved and the date of hearing. Additionally, there were various news articles and a map relating to the Area published in the Raleigh Times both before and after 15 September 1969.

Following the publication of the notices, public hearings were held on 16 July, 30 July, 12 August, 18 August and 15 September 1969. On 15 September 1969, the City of Raleigh enacted Zoning Ordinance "1969 858-ZC-76" which changed the zoning classification of the Area from R-4 to R-6, which allows multifamily dwellings and single family dwellings subject to a limitation of six housing units per acre.

In June 1969, and for some time thereafter, plaintiff Russell Capps was Wake County Planning Director in charge of zoning matters. In June of 1973, Summit Ridge acquired two tracts of land each containing approximately 30 acres at a total cost of $235,834 of which $106,834 was paid in cash and a purchase money note given for the balance. Thereafter in 1973, 1974, 1975 and 1976, Summit Ridge incurred cost and expense by way of architectural and engineering plans, street grading, paving, installation of water and sewer lines to both tracts, and construction of housing.

In April 1973, the City of Raleigh acquired 59 acres in the Starmount-New Hope area "which area encompasses the 1850

acres contemplated in the Capps suit". The City paid $122,000 for that property which is now known as the Marsh Creek Park. In July 1973, the City purchased an additional 16 acres at a purchase price of $45,000 and this is now known as Timberlake Park. These were acquired primarily due to the projected population density of the areas as permitted by R-6 zoning.

In 1973 the Raleigh Housing Authority began a search for land upon which to construct 60 units of apartments. A portion of one of the tracts owned by Summit Ridge was initially selected and on 7 November 1973, the Housing Authority entered into a contract for architectural and engineering services. This site was not approved but on 16 July 1975 a 13-acre portion of the same tract was approved. As of 28 September 1976, the Housing Authority had spent some $31,168.63 on this project and an additional $17,327 for schematic drawings pursuant to contract was soon to be paid.

On or about 24 June 1975, plaintiffs filed a petition to "down zone" the Area to R-4, and approximately a year later the petition was denied. On 23 July 1976, this suit was filed.

The effect of these undisputed facts was a question of law for the court to determine. The court concluded that the motions for summary judgment should be allowed because plaintiffs were guilty of laches and that their delay was unreasonable and without justification. Plaintiffs contend this was error. We disagree.

[2] Plaintiffs deny that they had actual notice of the proposed change in zoning and urge that without a finding of actual notice, the defendants' defense of laches will not lie. We agree with plaintiffs that there is a dispute as to whether they had actual notice. We do not agree that the defense of laches is unavailable where notice is constructive. Plaintiffs rely on *Stutts v. Swaim*, 30 N.C. App. 611, 228 S.E. 2d 750 (1976), *cert. den.* 291 N.C. 178 (1976). There the ordinance was enacted 12 November 1968, and the action was instituted 5 June 1974. Defendants Swaim owned approximately four acres of land adjacent to or near plaintiffs' land. The land owned by defendants Swaim and plaintiffs was zoned R-1, Residential, permitting single family and two family residences but specifically excluding mobile homes. In November 1968 the defendant City enacted an ordinance rezoning the Swaim proper-

ty to M-H, Mobile Home. Plaintiffs allege they had no notice of the change and the ordinance was therefore invalid. Defendants asserted the defense of laches. As to that defense, we held that the evidence was not sufficient to establish a prima facie showing and to require a finding and conclusion by the court. A plaintiff testified that until 1973 there was only one mobile home on the property. He had a conversation with defendant Swaim about a second mobile home which Swaim had recently placed on the property and was told by Swaim that he had no intention of placing any more mobile homes on the property; that it was too valuable for that; and that if he could get a loan he intended to build a home next to the witness's property. In March of 1974, Swaim had constructed a drive near the witness's property and put in a new well all of which the witness thought pertained to the contemplated new home. At that time he said he would place more mobile homes on the property as soon as he could get them; at the time of trial there were four mobile homes and one house on the property. Those plaintiffs who testified said they knew nothing about the rezoning ordinance of 1968 until 1973 or 1974. Defendants presented no evidence regarding expenditures made by them pursuant to the enactment of the rezoning ordinance. We held that

> ". . . defendants failed to carry the burden of showing that the delay by plaintiffs in challenging the validity of the ordinance in question was unreasonable and that the delay worked to their disadvantage, injury or prejudice. Therefore, the trial judge did not err in failing to find facts and make conclusions with respect to defendants' plea of laches." 30 N.C. App. at 619, 228 S.E. 2d at 755.

We do not interpret this case as supportive of plaintiffs' position. In *Stutts*, we said:

> "We find no merit in plaintiffs' contention that the rezoning ordinance is invalid because they had no notice of the 12 November 1968 meeting of the governing board of defendant city. The court found, on competent evidence, that a notice of a public hearing as required by law was duly published in a newspaper circulated in Randolph County on 24 September and 1 October 1968. We hold that the notice was sufficient. *Walker v. Elkin*, 254 N.C. 85, 118 S.E. 2d 1 (1961)." 30 N.C. App. at 614, 228 S.E. 2d at 752.

In *Helms v. Charlotte*, 255 N.C. 647, 652, 122 S.E. 2d 817, 821 (1961), the Court referring to *Blankenship v. City of Richmond*, 49 S.E. 2d 321 (Va. 1948), said:

> "Notice of a public hearing on a proposed amendment to the zoning ordinances was given by advertisement in a local newspaper. The Court held the notice sufficient and stated: 'The fact that the complainants did not see the notice certainly cannot affect the validity of the ordinance in question when everything required by the statute was done before its adoption. It is a matter of almost daily occurrence that rights are affected and the status of relationships is changed upon the giving of similar notice, but no one may successfully contend that acts predicated upon such notice are rendered invalid because persons affected did not see the notice in the newspaper.' This is in accord with the prevailing majority view throughout the country." (Citations omitted.)

*See also* 27 Am. Jur. 2d, *Equity*, §§ 166-167.

[2]   We hold that actual personal notice is not required in order for defendants to be able to avail themselves of the defense of laches.

[3]   Plaintiffs urge that if constructive notice be sufficient in this case, they had no constructive notice because the notice was defective. Again we disagree. At the time this ordinance was enacted, G.S. 160-175 was in effect and provided:

> "Method of procedure. — The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced, and from time to time amended, supplemented or changed. However, no such regulation, restriction or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. A notice of such public hearing shall be given once a week for two successive calendar weeks in a newspaper published in such municipality, or, if there be no newspaper published in the municipality, by posting such notice at four public places in the municipality, said notice to be published the first time or posted not less than fifteen days prior to the date fixed for said hearing."

Nowhere does the statute require a metes and bounds description. The notice states that the area to be affected is Northwest, North and Northeast Raleigh; that the area is in the *vicinity of* U.S. Highway 70; intersection of Creedmoor Road and Leesville Road; North Haven, North Ridge, intersection of Old Wake Forest Road, Spring Forest Road and Litchford Road; and U.S. Highway 1 and 401 (North), Millbrook Road, New Hope Church Road, and Trawick Road. This is sufficient to put property owners in the vicinity of these streets and roads on notice that their property might be rezoned.

[4, 5]   We now proceed to the merits of the defense. The defense of laches is properly raised by summary judgment motion. *Taylor v. City of Raleigh*, 290 N.C. 608, 227 S.E. 2d 576 (1976). "In equity, where lapse of time has resulted in some change in the condition of the property or in the relations of the parties which would make it unjust to permit the prosecution of the claim, the doctrine of laches will be applied." *Teachey v. Gurley*, 214 N.C. 288, 294, 199 S.E. 83, 88 (1938). Defendants properly do not question plaintiffs' right to attack the zoning ordinance in a declaratory action, and the Court in *Taylor v. City of Raleigh*, supra, approved the assertion of the defense of laches in a declaratory judgment action " '[s]ince proceedings for declaratory relief have much in common with equitable proceedings. . . . But the mere passage or lapse of time is insufficient to support a finding of laches; for the doctrine of laches to be sustained, the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke it.' 22 Am. Jur. 2d, Declaratory Judgments, § 78 (1965). *See also*, 101 C.J.S. *Zoning* § 354 (1958)." *Taylor v.. City of Raleigh*, 290 N.C. at 622-623, 227 S.E. 2d at 584-585. What will constitute laches depends on the facts and circumstances of each case. Here we think the undisputed facts clearly show that plaintiffs did nothing after the ordinance was adopted on 15 September 1969 to indicate their displeasure with the change in the classification of the Area until 1975 when, on 24 June, they filed a petition to "down zone" the Area to R-4. Their only reason or justification is that they had no *actual* notice of the adoption of the ordinance. We hold that, under the facts of this case five years and nine months is an unreasonable delay without reasonable excuse.

The undisputed facts show that since 15 September 1969, the defendants collectively have expended in excess of $600,000 in grading, paving, house construction, installation of water and sewer lines; in architectural and engineering services; and in acquisition of property to serve the Area as public parks. In addition, they have entered into legal obligations for the expenditure of substantial additional sums and have undergone substantial changes in economic, legal, and planning positions. All these rights acquired and established and obligations undertaken have been in reliance on the zoning ordinance.

We are of the opinion and so hold that Judge Bailey, from the undisputed facts material to the issue, correctly allowed defendants' motions for summary judgment.

Affirmed.

Judge HEDRICK concurs.

Judge ARNOLD dissents.

Judge ARNOLD dissenting.

While the statute does not require a metes and bounds description of the proposed area it does require an adequate description which will put the property owners in the area on notice. In my opinion there is a genuine issue of fact as to whether the description before us is adequate, and thus, whether plaintiffs had constructive notice.