IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-315

No. COA20-560

Filed 6 July 2021

Mecklenburg County, No. 18-CVS-23022

WELLS FARGO BANK, N.A., as Trustee of the JANE RICHARDSON
MCELHANEY REVOCABLE TRUST, WELLS FARGO BANK, N.A., as Trustee of
the SAMUEL CLINTON MCELHANEY REVOCABLE TRUST, and WELLS
FARGO BANK, N.A., as Executor of the ESTATE OF JANE RICHARDSON
MCELHANEY, Plaintiffs,

v.

ORSBON & FENNINGER, LLP, and R. ANTHONY ORSBON, Defendants.

Appeal by Defendants from order entered 3 March 2020 by Judge Donnie
Hoover in Mecklenburg County Superior Court. Heard in the Court of Appeals
24 March 2021.

*McGuireWoods, L.L.P., by T. Richmond McPherson, III and Anne L. Doherty,
for Plaintiffs-Appellees.*

*Brooks Pierce McClendon Humphrey & Leonard, L.L.P., by Gary S. Parsons
and Kimberly M. Marston, for Defendants-Appellants.*

COLLINS, Judge.

¶ 1 Anthony Orsbon and his law firm, Orsbon & Fenninger, LLP, (collectively,
"Defendants") appeal from an order denying their motion for summary judgment on
certain defenses and granting Wells Fargo Plaintiffs' motion for partial summary

judgment.  Defendants argue that the trial court erred by denying their motion for summary judgment as to the defenses of collateral estoppel and election of remedies and granting Wells Fargo Plaintiffs summary judgment on those defenses.  Because Defendants have not shown sufficient grounds for immediate appellate review of the trial court's interlocutory order as to the election of remedies defense, we deny Defendants' petition for writ of certiorari and dismiss Defendants' arguments concerning that defense.  Because Defendants cannot show that each element of collateral estoppel is satisfied, we affirm the trial court's order as to that defense.

## I.    Procedural History

The present action follows a declaratory judgment action ("Declaratory Action") brought by Wells Fargo Bank, N.A., as trustee of the Jane Richardson McElhaney Revocable Trust ("Wells Fargo as Jane's Trustee"), and a claim for reformation of that trust ("Reformation Claim") brought by Jacob and Julia McElhaney.  On 7 December 2018, the Mecklenburg County Superior Court announced its ruling from the bench on a motion for summary judgment and judgment on the pleadings in those actions.

The same day, Wells Fargo as Jane's Trustee, along with Wells Fargo Bank, N.A., as trustee of the Samuel Clinton McElhaney Revocable Trust, and Wells Fargo Bank, N.A., as executor of the Jane Richardson McElhaney Estate (together, "Wells Fargo Plaintiffs") brought this action against Defendants alleging negligence and

legal malpractice. Simultaneously, Jacob and Julia McElhaney brought an action against Defendants alleging negligence, legal malpractice, and breach of contract arising from the same set of facts. Upon consent motions in both cases, the trial court consolidated the actions for the purposes of discovery. With leave of the trial court, Defendants filed amended answers in each action. Defendants asserted as defenses that each of the plaintiffs lacked standing and that collateral estoppel and election of remedies barred each of the plaintiffs' claims. Defendants also contended that Wells Fargo Plaintiffs' claims were barred by contributory negligence and the equitable doctrines of estoppel and laches.

¶ 4        Defendants moved for summary judgment in both actions on their defenses of collateral estoppel and election of remedies, as well as an alleged lack of damages from some or all of Defendants' alleged negligent acts. Defendants also moved for summary judgment against Wells Fargo Plaintiffs on the defense of lack of standing. Wells Fargo Plaintiffs moved for partial summary judgment on standing, collateral estoppel, equitable estoppel, laches, and election of remedies. Likewise, Jacob and Julia McElhaney moved for partial summary judgment on standing, collateral estoppel, and election of remedies.

¶ 5        In a consolidated order ("Order on Appeal"), the trial court granted the motions for partial summary judgment by Wells Fargo Plaintiffs and Jacob and Julia McElhaney and denied Defendants' motions. Defendants timely appealed.

## II.    Factual Background

### A. The Estate Planning Documents

¶ 6        In May 1996, both Samuel and Jane McElhaney established revocable trusts, Samuel's Trust and Jane's Trust, respectively.  In the fall of 2010, attorney Anthony Orsbon ("Orsbon") assisted Samuel and Jane in amending these trusts and preparing other estate planning documents.  On 12 October 2010, Samuel and Jane executed separate trust agreements amending and restating their trusts.  As amended, both provided that the trust of the first spouse to die would be divided into a marital share and a family share, each share to be administered as a trust.  During the surviving spouse's lifetime, he or she would be entitled to certain distributions from both the marital trust and the family trust.

¶ 7        Upon the surviving spouse's death, the surviving spouse's entire trust would be allocated to the family share which, along with any remains of the marital share, would be distributed to an identified set of beneficiaries ("Specific Beneficiaries"). Following amendments in 2011, Samuel's and Jane's Trusts each provided for identical bequests to identical lists of Specific Beneficiaries, comprised of relatives and private organizations.

¶ 8        Each Specific Beneficiary would receive both the bequest provided in Samuel's Trust and the bequest provided in Jane's Trust.  The surviving spouse held a limited power of appointment "at any time and from time to time by and through [his or her]

Last Will and Testament to reduce or decrease any or all bequest amounts bequeathed to" the Specific Beneficiaries.

¶ 9    After disbursement to the Specific Beneficiaries, any remainder would be held by the trustee "for the benefit of [Samuel and Jane's] grandchildren who are living at the Division Date." Samuel and Jane's one son, Scott McElhaney, had two children, Jacob and Julia McElhaney. Following Scott McElhaney's death in 2010, Jacob and Julia ("Residuary Beneficiaries") were the sole living descendants of Samuel and Jane. After Samuel died in August 2015, Jane consulted Orsbon concerning her estate planning documents. In October 2015, Orsbon provided drafts of updated estate documents to Jane's Wells Fargo financial advisor, Linda Montgomery. In November, Montgomery had discussions with Orsbon concerning changes Jane desired to make to the draft documents.

¶ 10    On 8 December 2015, Jane executed a new Last Will and Testament ("Jane's Will") and an Amended and Restated Trust Agreement modifying her Trust. Jane's Will disposed of certain personal property and otherwise left the remainder of her estate to her Trust via a pour-over clause. Jane's Trust, as amended in 2015, stated that "[t]he Family Share shall be administered as a Family Trust" with a changed list of specific bequests. The amendment eliminated certain Specific Beneficiaries, reduced bequests to others, and added one new Specific Beneficiary. The remainder of Jane's Trust after payment to the Specific Beneficiaries was to be divided in equal

shares and held in trust for Jane's grandchildren or, if applicable, the issue of her deceased grandchildren. Jane died on 21 April 2017.

## B. The Declaratory Action and Reformation Claim

¶ 11       On 3 October 2017, Wells Fargo as Jane's Trustee instituted the Declaratory Action in Mecklenburg County Superior Court. Its petition for declaratory judgment included the following allegations:

> 22. Specifically, as [Jane's] Trust does not provide for the creation and disposition of a Family Share or Family Trust, the reference to the Family Trust contained in [Jane's] Trust creates a latent ambiguity as to whether by making such reference Jane intended to exercise her testamentary limited power of appointment over the Family Trust created under Samuel's Revocable Trust.

> 23. [Jane's] Trust does not reference the testamentary limited power of appointment granted to Jane. Even if it did, the power of appointment granted to Jane was limited to the power to "reduce or decrease" the bequest of the specific beneficiaries named in Samuel's Trust, and the provision in [Jane's] Trust adds a beneficiary, Ellen McElhaney, which is not authorized by the testamentary limited power of appointment granted to Jane . . . .

> 24. [Jane's] Will does not reference the testamentary limited power of appointment granted to Jane in the Family Trust or any attempt to exercise such power of appointment.

> . . . .

> 35. The Trustee is not aware of any evidence that would be admissible to clarify Jane's intent in using the term "Family Share" and/or "Family Trust" in [Jane's]

Trust.

¶ 12    Wells Fargo as Jane's Trustee requested the trial court to:

> 1. Declare that [Jane's] Will did not exercise Jane's testamentary limited power of appointment over the Family Trust.
>
> 2. Absent the admissibility of evidence to clarify the latent ambiguity in [Jane's] Trust sufficient to find that Jane exercised her testamentary limited power of appointment over the Family Trust, declare that [Jane's] Trust does not exercise Jane's testamentary limited power of appointment over the Family Trust[.]
>
> 3. Absent the admissibility of evidence to clarify the latent ambiguity in [Jane's] Trust sufficient to find that Jane exercised her testamentary limited power of appointment over the Family Trust, declare that the Trustee shall distribute the property of the Family Trust as set forth in . . . Samuel's Revocable Trust.
>
> 4. Absent the admissibility of evidence to clarify the latent ambiguity in [Jane's] Trust sufficient to find that Jane exercised her testamentary limited power of appointment over the Family Trust, declare that the references to Family Share and Family Trust in [Jane's] Trust refer to all of the property of [Jane's] Trust and that the Trustee shall distribute the property of [Jane's] Trust pursuant to the provisions of . . . the Trust.

¶ 13    On 19 March 2018, the Residuary Beneficiaries filed a response to the petition for declaratory judgment and asserted the Reformation Claim against Wells Fargo as Jane's Trustee and the Specific Beneficiaries. The Residuary Beneficiaries alleged that

> [Jane's] Trust's express references to "The Family Share"

and "Family Trust" created under Samuel's Revocable Trust, the substantial identity in beneficiaries between [Jane's] Trust and Samuel's Revocable trust, and [Jane's] Trust's reduction of the specific bequests set forth in Samuel's Revocable Trust each are indicative of Jane's desire and intent to exercise the testamentary limited power of appointment granted to her under Samuel's Revocable Trust.

The Residuary Beneficiaries contended that additional extrinsic evidence "further reveals that Jane intended, through execution of her Will and the Trust, to exercise the testamentary limited power of appointment granted to her under Samuel's Revocable Trust."

¶ 14 The Residuary Beneficiaries sought reformation of Jane's Trust under N.C. Gen. Stat. § 36C-4-415 on the ground that it "fail[ed] to include language clearly expressing Jane's intent to exercise the testamentary limited power of appointment granted to her under Samuel's Revocable Trust." The Residuary Beneficiaries sought to eliminate the bequests to Specific Beneficiaries in Jane's Trust as contrary to Jane's intent.

¶ 15 Several of the Specific Beneficiaries moved for summary judgment and, in the alternative, judgment on the pleadings, arguing that reformation was not available as a matter of law. The Residuary Beneficiaries filed a brief and multiple affidavits in opposition. On 7 December 2018, the trial court orally announced its ruling:

I did read everything because I wanted to make sure that in addition to the arguments that I went back and

reviewed everything in context of your arguments. . . . I read the depositions, read the affidavits, read the arguments and reformation and extrinsic evidence.

. . . .

[I]n reviewing everything that was provided to me regarding Jane's [T]rust and the issue of power of appointment and whether it was exercised. . . . I have to find that I don't see any issues of material fact in this case as relates to what her intentions were at the time of the execution.

So as to the petition for declaratory judgment, I'm finding that Jane did not exercise her testamentary limited . . . power of appointment in either her will or her trust and that the claim for reformation will not be available based on the evidence of her intent at the time of execution. So again, as to the motion for summary judgment, I cannot find there are any genuine issues of material fact . . . .

I will also grant the motion for judgment on the pleadings after reviewing the pleadings in the file in this case, and that will be my order.

¶ 16        The trial court entered a written order ("Underlying Order") on 20 December 2018 stating as follows:

After review of the matters of record including, without limitation, the pleadings, including the Petition, the Counterclaim, the Crossclaim, the Answers, and the exhibits referenced therein, the parties' submissions to the Court and materials filed in support of and in opposition to [the Specific Beneficiary] Movants' Motions, including sworn deposition testimony, and having the benefit of legal briefs and oral argument by counsel for the parties, the Court finds and determines that there exists no genuine issue as to any material fact and that Movants are entitled to Judgment as a matter of law on all claims and causes of

> action asserted in this action, except the Movants' Motion
> for attorneys' fees and costs . . . .

The trial court granted the Specific Beneficiary Movants' motion for summary judgment and, in the alternative, granted their motion for judgment on the pleadings. As to the petition for declaratory judgment, the trial court declared that Wells Fargo Bank, N.A., shall distribute the property in Samuel's Trust and Jane's Trust as written in the trust instruments. Finally, the trial court dismissed the Reformation Claim with prejudice. The Residuary Beneficiaries timely appealed to this Court, but withdrew their appeal after the parties entered into a confidential settlement agreement.

**C. The Negligence and Malpractice Actions**

On 7 December 2018, shortly after the trial court orally announced its decision in the Declaratory Action and Reformation Claim, Wells Fargo Plaintiffs and the Residuary Beneficiaries filed their respective actions for negligence and legal malpractice. The trial court granted summary judgment in favor of Wells Fargo Plaintiffs and the Residuary Beneficiaries on the defenses of lack of standing, collateral estoppel, equitable estoppel, laches, and election of remedies, and against Defendants with respect to their defenses of collateral estoppel, election of remedies, standing, and the alleged lack of damages due to some or all of Defendants' alleged negligent acts. Defendants appealed.

### III.    Appellate Jurisdiction

¶ 18        We first address whether Defendants' appeal is properly before this Court.  The Order on Appeal is interlocutory because it does not "dispose[] of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court."  *See Veazey v. City of Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950). There is generally no right to immediate appeal of an interlocutory order.  *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990).  The purpose of this rule is to "prevent fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts."  *Fraser v. Di Santi*, 75 N.C. App. 654, 655, 331 S.E.2d 217, 218 (1985) (citation omitted).  A party may immediately appeal an interlocutory order, however, if the order "affects a substantial right claimed in any action or proceeding[.]"  N.C. Gen. Stat § 1-277(a) (2021).

¶ 19        Defendants contend that the Order on Appeal is immediately appealable to the extent that its denial of their motion for summary judgment on the defense of collateral estoppel affects a substantial right.  "The doctrine [of collateral estoppel] is designed to prevent repetitive lawsuits, and parties have a substantial right to avoid litigating issues that have already been determined by a final judgment."  *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009).  Thus, "[i]t is well established that the denial of a motion for summary judgment 'affects a

substantial right when the motion . . . makes a colorable assertion that [a] claim is barred under the doctrine of collateral estoppel.'" *Gray v. Fannie Mae*, 264 N.C. App. 642, 645, 830 S.E.2d 652, 655-56 (2019) (quoting *Turner*, 363 N.C. at 558, 681 S.E.2d at 773); *see also Fox v. Johnson*, 243 N.C. App. 274, 281, 777 S.E.2d 314, 321 (2015) (holding that appellants made a colorable assertion of collateral estoppel by including the defense in their answer and as a basis for their motion for judgment on the pleadings); *Hillsboro Partners, LLC v. City of Fayetteville*, 226 N.C. App. 30, 35, 738 S.E.2d 819, 823 (2013) (concluding that appellant made a colorable assertion of collateral estoppel because the prior and instant lawsuits both arose from the same building demolition).

¶ 20     In this case, before the trial court, Defendants moved for summary judgment based on collateral estoppel. Defendants thoroughly briefed and argued each element of collateral estoppel and referenced numerous citations to caselaw and the evidentiary record. We conclude that Defendants have made a colorable assertion of collateral estoppel and the Order on Appeal may affect their "substantial right to avoid litigating issues that have already been determined by a final judgment." *See Turner*, 363 N.C. at 558, 681 S.E.2d at 773. Accordingly, we will review the Order on Appeal's denial of the defense of collateral estoppel.

¶ 21     Defendants aptly concede that no precedent holds that the denial of summary judgment on the defense of election of remedies affects a substantial right. Indeed,

"[t]he avoidance of one trial is not ordinarily a substantial right." *Green v. Duke Power Co.*, 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982). As such, Defendants have petitioned for a writ of certiorari requesting this Court to review the Order on Appeal as to their defense of election of remedies.

¶ 22 This Court may issue the writ of certiorari "in appropriate circumstances . . . to permit review of . . . orders of trial tribunals when . . . no right of appeal from an interlocutory order exists . . . ." N.C. R. App. P. 21(a). We assess petitions seeking review of interlocutory orders in light of our "general policy against the piecemeal review of" such orders. *See Harbor Point Homeowners' Ass'n ex rel. Bd. of Directors v. DJF Enterprises, Inc.*, 206 N.C. App. 152, 165, 697 S.E.2d 439, 448 (2010). We have emphasized that "the routine allowance of interlocutory appeals would have a tendency to delay, rather than advance, the ultimate resolution of matters in litigation." *Newcomb v. Cnty. of Carteret*, 207 N.C. App. 527, 554, 701 S.E.2d 325, 344 (2010).

¶ 23 Defendants argue that this Court should grant certiorari because (1) the issue of election of remedies "arises from substantially the same facts as the collateral estoppel issue; (2) the issue could be equally dispositive; (3) the issue is ripe; and (4) it would promote judicial economy by eliminating the need for a later appeal on this issue." These arguments are unavailing because "similar considerations would support the issuance of a writ of certiorari in virtually any case in which a trial court

refuses to grant summary judgment" on one out of several affirmative defenses. *See id.* at 553, 701 S.E.2d at 344. Additionally, as Wells Fargo Plaintiffs argue, a decision by this Court on the merits of the issue would not necessarily dispose of all claims as to all parties. Accordingly, in our discretion, we deny Defendants' petition for a writ of certiorari and decline to review the merits of their arguments concerning the defense of election of remedies.

## IV. Discussion

¶ 24        Defendants argue that the trial court erred by denying their motion for summary judgment on the defense of collateral estoppel and granting Wells Fargo Plaintiffs' motion as to that defense. Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2020). "The standard of review for summary judgment is de novo." *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citation omitted).

¶ 25        "Under the collateral estoppel doctrine, parties and parties in privity with them are precluded from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination." *Turner*, 363 N.C. at 558, 681 S.E.2d at 773 (alteration, citation, and quotation marks omitted). "The issues resolved in the prior action may be either factual issues or legal issues." *Doyle*

*v. Doyle*, 176 N.C. App. 547, 549, 626 S.E.2d 845, 848 (2006). The party alleging

collateral estoppel must demonstrate

> that the earlier suit resulted in a final judgment on the
> merits, that the *issue in question was identical to an issue*
> *actually litigated and necessary to the judgment*, and that
> both the party asserting collateral estoppel and the party
> against whom collateral estoppel is asserted were either
> parties to the earlier suit or were in privity with parties.

*State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 414, 474 S.E.2d 127, 128-29 (1996)

(emphasis added) (brackets, quotation marks, and citation omitted). For issues to be

considered "identical" to ones "actually litigated and necessary" to a previous

judgment:

> (1) the issues must be the same as those involved in the
> prior action, (2) the issues must have been raised and
> actually litigated in the prior action, (3) the issues must
> have been material and relevant to the disposition of the
> prior action, and (4) the determination of the issues in the
> prior action must have been necessary and essential to the
> resulting judgment.

*State v. Summers*, 351 N.C. 620, 623, 528 S.E.2d 17, 20 (2000) (citation omitted). "The

burden is on the party asserting [collateral estoppel] to show with clarity and

certainty what was determined by the prior judgment." *Miller Bldg. Corp. v. NBBJ*

*N.C., Inc.*, 129 N.C. App. 97, 100, 497 S.E.2d 433, 435 (1998) (internal quotation

marks and citation omitted); *accord Powers v. Tatum*, 196 N.C. App. 639, 642, 676

S.E.2d 89, 92 (2009).

¶ 26        Defendants argue that the instant malpractice and negligence suits present the identical issue as the Declaratory Action and Reformation Claim: whether Jane intended to exercise her limited power of appointment.  Defendants contend that this issue was actually litigated and that in the course of deciding the motions for summary judgment and judgment on the pleadings in the Declaratory Action and Reformation Claim, the trial court actually and necessarily determined that Jane did not intend to exercise her limited power of appointment.

¶ 27        Wells Fargo Plaintiffs respond that (1) the trial court did not actually determine whether Jane intended to exercise the power of appointment, but instead only determined that the issue of Jane's intent was immaterial; (2) even if the trial court did determine the issue of Jane's intent, that determination was unnecessary to the Underlying Order; (3) Wells Fargo Plaintiffs were not all parties in the Declaratory Action and Reformation Claim, so they did not all have a full and fair opportunity to litigate the issue; (4) the heavier burden of proof applicable to the Reformation Claim bars the application of collateral estoppel; and (5) the Declaratory Action and Reformation Claim involved different facts than the present action.

¶ 28        The Residuary Beneficiaries did raise the issue of Jane's intent in the Declaratory Action.  Specifically, they argued that a material issue of Jane's intent precluded summary judgment as to the petition for declaratory judgment.  They contended the issue was material to whether Jane had successfully exercised her

power of appointment by substantially complying with the terms set out in Samuel's Trust, as required by N.C. Gen. Stat. § 31D-3-304.

¶ 29    The Residuary Beneficiaries also raised the issue of Jane's intent while pursuing their Reformation Claim, which sought "to correct a mistake that occurred as the result of a scrivener's error which caused [Jane's Trust] to fail to conform the terms of trust to [Jane's] intent." Both the Residuary Beneficiaries and Specific Beneficiaries extensively litigated the issue of Jane's intent prior to entry of the Underlying Order. Nonetheless, Defendants cannot meet their burden of showing "with clarity and certainty" that the issue of Jane's intent was actually and necessarily determined by the Underlying Order. *See Miller Bldg. Corp.*, 129 N.C. App. at 100, 497 S.E.2d at 435.

¶ 30    When the trial court orally announced its ruling, it stated in pertinent part that

> in reviewing everything that was provided to me regarding Jane's [T]rust and the issue of power of appointment and whether it was exercised . . . . *I have to find that I don't see any issues of material fact in this case as relates to what her intentions were at the time of the execution.*
>
> So as to the petition for declaratory judgment, I'm finding that Jane did not exercise her testamentary limited . . . power of appointment in either her will or her trust and that *the claim for reformation will not be available based on the evidence of her intent at the time of execution. So again, as to the motion for summary judgment, I cannot find there are any genuine issues of material fact . . . .*

(emphasis added).

The written Underlying Order stated in pertinent part that

> there exists no genuine issue as to any material fact and
> that [the Specific Beneficiary] Movants are entitled to
> judgment as a matter of law on all claims and causes of
> action asserted in this action, except the Movants' Motion
> for attorneys' fees and costs . . . .

¶ 31      The Underlying Order granted the moving Specific Beneficiaries' motion for summary judgment and, in the alternative, the motion for judgment on the pleadings.[1] While the "slightest doubt" as to a material fact entitles a party opposing summary judgment to trial, *Adventure Travel World, Ltd. v. Gen. Motors Corp.*, 107 N.C. App. 573, 577, 421 S.E.2d 173, 176 (1992) (citation omitted), a dispute as to an immaterial fact will not preclude summary judgment, *Capps v. City of Raleigh*, 35 N.C. App. 290, 293, 241 S.E.2d 527, 529 (1978). Likewise, "[j]udgment on the pleadings is proper when 'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'"

---

[1] We note that where "matters outside the pleadings are presented to and not excluded by the court," a motion seeking judgment on the pleadings must be treated as a motion for summary judgment. *See* N.C. Gen. Stat. § 1A-1, Rule 12(c) (2018). Because the trial court explicitly stated that it considered matters outside the pleadings, it was improper to grant judgment on the pleadings in the alternative. *See Battle v. Clanton*, 27 N.C. App. 616, 618, 220 S.E.2d 97, 98 (1975) (holding that judgment on the pleadings was inappropriate where "matters outside the pleadings were presented to and considered by the court"). Even so, the Underlying Order's grant of judgment on the pleadings in the alternative illuminates the possible bases of the trial court's dismissal of the Reformation Claim.

*Shearin v. Brown*, 2021-NCCOA-4, ¶ 11 (quoting *Samost v. Duke Univ.*, 226 N.C. App. 514, 518, 742 S.E.2d 257, 260 (2013)). The petition for declaratory judgment and the counterclaim and crossclaim for reformation took inconsistent positions on the issue of Jane's intent. Prior to entry of the Underlying Order, the parties submitted plainly conflicting evidence on this issue to the trial court.[2]

¶ 32 The trial court may have determined the issue of Jane's intent by concluding that it was required to disregard some of the conflicting evidence of Jane's intent as a matter of law. But it is also possible that the trial court merely determined that the conflicting evidence of Jane's intent was immaterial as a matter of law. Specifically, the trial court could have resolved the Declaratory Action by determining that Jane had not substantially complied with the requirements on her limited power of appointment, regardless of her intent. *See* N.C. Gen. Stat. § 31D-3-304 (2015). Section 31D-3-304 provides that

> [a] power holder's substantial compliance with a formal requirement of appointment imposed by the donor . . . is sufficient if both of the following apply:
>
> (1) The power holder knows of and intends to exercise the power.

---

[2] This evidence included, *inter alia*, Orsbon's deposition testimony denying that Jane intended to exercise the limited power of appointment or directed him to draft her estate documents to do so, Linda Montgomery's deposition testimony that Jane did intend to exercise the limited power of appointment, and affidavits from various witnesses attesting that Orsbon had acknowledged Jane's intent to exercise the limited power of appointment during a "family meeting" concerning trust administration.

> (2) The power holder's manner of attempted exercise of the power does not impair a material purpose of the donor in imposing the requirement.

*Id.* The Underlying Order could be based on a determination under section 31D-3-304 that Jane's "manner of attempted exercise . . . impair[ed] a material purpose" of the restrictions in Samuel's Trust, and Defendants cannot show that Jane's intent was material to, and therefore actually and necessarily determined in, the Declaratory Action.

¶ 33          Nor can Defendants show that the issue of Jane's intent was material to the Reformation Claim, and therefore actually and necessarily determined. The trial court's oral announcement could be understood as stating that reformation was unavailable because there was no genuine issue that Jane did not intend to exercise the power of appointment. But a closer examination of the Record and Underlying Order demonstrates that, as Wells Fargo Plaintiffs argue, the trial court likely determined that Jane's intent was immaterial to the Reformation Claim. Residuary Beneficiaries did not cite any precedent supporting the proposition that a court may reform a trust under § 36C-4-415 based on the settlor's intent to exercise a power of appointment that by its terms could only be exercised in the power holder's will. The moving Specific Beneficiaries underscored this issue and argued that "the relief [the Residuary Beneficiaries] seek far exceeds the scope of permissible reformations under North Carolina Law."

On these facts, Defendants cannot show with clarity and certainty that the issue of Jane's intent was actually and necessarily determined in the Declaratory Action or Reformation Claim.[3]  Accordingly, collateral estoppel does not bar Wells Fargo Plaintiffs' claims.  *See Frinzi*, 344 N.C. at 414, 474 S.E.2d at 128-29.  The trial court did not err in denying Defendants' motion for summary judgment and granting Wells Fargo Plaintiffs' motion for partial summary judgment on the defense of collateral estoppel.

## V.     Conclusion

We deny Defendants' petition for a writ of certiorari to review the Order on Appeal as to the defense of election of remedies.  Because Defendants cannot show that each element of the affirmative defense of collateral estoppel is satisfied, the trial court did not err in denying their motion for summary judgment and granting Wells Fargo Plaintiffs' motion for partial summary judgment as to that defense.

AFFIRMED.

Judges ZACHARY and HAMPSON concur.

---

[3] We therefore need not reach Wells Fargo Plaintiffs' additional arguments that collateral estoppel cannot apply here.